United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT,<br><br>   Plaintiff,<br><br> v.<br><br>WILLIAM D. SPENCER, et al.,<br><br>   Defendants.<br>_____/ | No. C 04-04632 SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; AND DENYING DEFENDANTS' MOTION TO STRIKE** |

On Friday, September 2, 2005, the Court heard argument on defendants' Motion to Dismiss and Motion to Strike Plaintiff's First Amended Complaint. Having carefully considered the parties' arguments, and for good cause appearing, the Court hereby GRANTS defendants' Motion to Dismiss plaintiff's claims under California Business & Professions Code § 17200 with leave to amend, and DENIES the remainder of defendants' Motion to Dismiss. The Court further DENIES defendants' Motion to Strike.

**BACKGROUND**

Plaintiff, San Francisco Bay Area Rapid Transit District ("BART"), seeks to recover from William D. Spencer ("Spencer"), his companies, and their employees, for damages it claims were caused by the defendants' fraudulent practices in connection with work performed under BART construction subcontracts. BART alleges that the defendants charged it for thousands of dollars in fees that were used to pay "kickbacks" to another construction firm.

According to BART's Complaint, Spencer is the sole owner of two San Francisco Bay Area

construction firms: F.W. Spencer and Son, Inc. ("FWS"); and Brisbane Mechanical Co. ("BMC").[1] In 1996, Spencer met with Virgilio Talao ("Talao"), the owner and operator of San Luis Gonzaga Construction Company ("SLG"). At this meeting, Spencer proposed that the two enter into a joint venture to bid on construction subcontracts.

The purported rationale for this joint venture was SLG's status as a minority-owned company. Because government contracts usually contain a requirement that prime contractors make good faith efforts to use disadvantaged business enterprises ("DBEs") in performing construction contracts,[2] partnering with SLG would generally make a company more attractive to a prime contractor for subcontracting work. With this goal in mind, Spencer and Talao formed a joint venture between SLG and BMC, which they called SLG/Brisbane Mechanical JV ("SLG/BMC").

The Complaint alleges that, while nominally a joint venture that qualified for DBE participation credit, SLG/BMC did not operate as such.[3] Instead, Spencer and Talao agreed to an arrangement in which Spencer would pay SLG for the use of its name and DBE status, while Spencer's company would perform the actual construction work. Talao's only responsibility under the agreement was to convince the awarding agency that SLG/BMC was a legitimate DBE joint venture. He was to attend all pre-bid meetings and speak as if he were the controlling partner of SLG/BMC. In return, Talao received 1-3% of the amount of the subcontract – 3% of subcontracts worth up to $1 million, 2% of subcontracts worth between $2 and $3 million, and 1% of subcontracts for more than $3 million.

Spencer's role in the joint venture was to perform the construction work. His company provided the

---

[1] The following facts are taken from plaintiff's First Amended Complaint. At this stage of the proceedings, the Court accepts the allegations in plaintiff's Complaint as true. *McGary v. City of Portland*, 386 F.3d 1259, 1261 (9th Cir. 2004).

[2] Specifically, federal regulations govern public transit contracts paid for by federal funds, such as BART's contracts at issue in this case. Under the regulations then in effect, BART was required to establish specific DBE participation goals, expressed as a percentage of the total dollar value of work to be awarded on each prime contract. 49 C.F.R. § 23.45 (1998). In addition, prime contractors on BART bids were required to commit to meeting BART's DBE participation goals, or to make good faith efforts to do so. *Id.*

[3] Under the governing regulations, work performed by a joint venture between a certified DBE and a non-DBE business counted towards contractual DBE participation goals in proportion to the ownership and control of the DBE partner in the joint venture. 49 C.F.R. § 23.47(a) (1998). If a DBE owned at least 51% of the joint venture, however, then the entire amount of the work performed by the joint venture was counted towards the DBE goal. *Id.*

2

financing, labor, and equipment for the construction job, and received progress payments under the subcontract. When Spencer's company received these payments, Talao would create an after-the-fact invoice for "Engineering Services" for the agreed upon percentage of the payment. He would then submit the invoice to either FWS or BMC and Spencer would pay SLG from a bank account held in the name of SLG/BMC.

In 1999, Spencer and Talao agreed to use SLG/BMC to bid on subcontracts for planned construction at San Francisco International Airport ("SFO"). Those plans included expanding and modernizing the airport through the construction of a new international terminal and new parking garages. They also included the construction of a BART line extension to SFO, covering both design and construction of the line as well as design and construction of the South San Francisco, San Bruno, and Millbrae BART stations. All told, the prime contracts for the BART extension initially totaled over $700 million, and the total cost of the project has now reached $1.5 billion.

Two separate prime contractors, Tutor-Saliba/Slattery JV ("Tutor") and Sverdrup-Conco AJV ("Sverdrup"), were ultimately awarded the contracts for the principal projects at issue. Both of these prime contractors, in turn, awarded SLG/BMC subcontracts now valued at over $10 million. SLG/BMC also was awarded an additional subcontract for the expansion of BART's Concord Shop.

Tutor and Sverdrup eventually sought DBE credit from BART for work performed by SLG/BMC on the contracts. In response, BART's Office of Civil Rights ("OCR") conducted an examination of SLG/BMC to determine if it met BART's DBE criteria. As part of this examination, OCR requested a copy of the SLG/BMC joint venture agreement. After receiving this request, William McGahan ("McGahan"), the in-house counsel for FWS, drafted a joint venture agreement that would meet BART's DBE requirements. This agreement represented that: (1) SLG made an initial contribution of $5,000 to the joint venture, when, in fact, SLG had contributed no funds; (2) SLG had a 51% interest in the joint venture, when SLG did not have such an interest; and (3) revenue from the joint venture would be distributed according to the respective interests of the joint venturers, when, in fact, SLG received only 1-3% of the revenue, as discussed above.

In February 1999, OCR made the determination that SLG/BMC did not qualify for DBE participation credit under BART's guidelines. Spencer continued to fight this determination until August 1999. At that time, Spencer disassociated SLG from the joint venture, nominally because SLG's contractors license had been

3

suspended by the California State Labor Board ("CSLB"). In September 1999, the CSLB allowed BMC to continue to operate the joint venture without SLG's participation. BMC continued as a subcontractor on the projects, submitting invoices to the prime contractors through 2003.

In 2003, for the first time, BART learned from the San Francisco City Attorney's Office that the BART projects had been a target of the fraudulent scheme perpetrated by the defendants. BART subsequently conducted an investigation and filed this lawsuit in November 2004. Now before the Court is defendants' Motion to Dismiss.[4]

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). In answering this question, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff." *McGary v. City of Portland*, 386 F.3d 1259, 1261 (9th Cir. 2004). "Dismissal of the complaint is appropriate only if it appears beyond doubt that the claimant can prove no set of facts in support of the claim which would entitle him to relief." *ARC Ecology v. United States Dept. of the Air Force*, 411 F.3d 1092, 1096 (9th Cir. 2005).

Federal Rule of Civil Procedure 12(b)(7) provides that a party may move to dismiss a case for "failure to join an party under Rule 19." Fed. R. Civ. P. 12(b)(7). In applying Rule 19, a court must conduct three separate inquiries. "First, the court must determine whether a non-party should be joined under Rule 19(a)." *EEOC v. Peabody Western Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005). If the court determines that a non-party should be joined, "the second stage is for the court to determine whether it is feasible to order that the absentee be joined." *Id.* "Finally, if joinder is not feasible, the court must determine at the third stage whether the case can proceed without the absentee, or whether the absentee is an 'indispensable party' such

---

[4] In connection with their Motion to Dismiss, defendants have requested that the Court take judicial notice of a series of ten documents, the majority of which BART does not oppose. The Court therefore GRANTS defendants' Request for Judicial Notice with respect to Exhibits 1, 2, 3, 4, 5, 7, 8, and 9. For reasons provided below, however, the Court DENIES defendants' Request for Judicial Notice with respect to Exhibits 6 and 10.

4

United States District Court
For the Northern District of California

that the action must be dismissed." *Id.*

Under Federal Rule of Civil Procedure 12(f), a court "may order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

**DISCUSSION**

**I.   Motion to Dismiss**

Defendants raise a host of challenges to plaintiff's First Amended Complaint. The Court addresses each in turn.

**A.   RICO Claims**

Defendants raise a number of challenges to BART's civil RICO claims. For the following reasons, the Court DENIES defendants' Motion to Dismiss the RICO claims.

**(1)   Res Judicata**

The doctrine of *res judicata* "is central to the purpose of which civil courts have been established, the conclusive resolution of disputes within their own jurisdiction." *Headwaters, Inc. v. United States Forest Service*, 399 F.3d 1047, 1052-53 (9th Cir. 2005). The doctrine provides that a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. *Id.* at 1052. Thus, to establish *res judicata*, a defendant must establish three elements: (1) an identity of claims; (2) a final judgment on the merits; and (3) privity between parties. *Id.* at 1053. Defendants argue that a lawsuit brought in this district by the city of San Francisco in 2002, and ultimately dismissed with prejudice, is *res judicata* to BART's RICO claim. *See City and County of San Francisco, et al. v. Spencer, et al.*, No. 02-5086 PJH.

Defendants have failed to establish, however, that San Francisco and BART were in privity with each other. Rather than arguing that the two entities had a traditional privity relationship, defendants argue that San Francisco was BART's "virtual representative." *See generally Irwin v. Mascott*, 370 F.3d 924, 929 (9th Cir. 2004) (detailing when a party may be bound by its "virtual representative"). In support of their position, defendants have requested that the Court take judicial notice of a "Common Interest Agreement" executed

5

1  between San Francisco and BART in connection with the previous litigation.

2  As an initial matter, the Court finds that the Common Interest Agreement is not a matter of public record and is therefore inappropriate for consideration on a motion to dismiss. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (holding that extrinsic evidence may be considered on a motion to dismiss only where it is material submitted with the complaint or where it is a "matter[] of public record"). Defendant's arguments in support of privity are likewise premature. Virtual privity requires two elements: identity of interests and adequate representation. *Headwaters*, 399 F.3d at 1054. The Ninth Circuit has cautioned, however, that "the requisites for finding nontraditional forms of privity . . . are not readily determined from the pleadings." *Id.* Rather, "the pertinent 'virtual representation' privity factors . . . require factual development beyond the bare record." *Id.* at 1055. Thus, at this stage of the proceedings, the Court cannot find that privity has been established, and the Motion to Dismiss the RICO claims based on *res judicata* must be DENIED.

### (2) Statute of Limitations

Although RICO does not provide an express statute of limitations for actions brought under its civil enforcement provision, the Supreme Court has held that RICO actions must be brought within four years of the time the RICO claim accrued. *Agency Holding Corp. v. Malley-Duff Assoc., Inc.*, 483 U.S. 143, 156, 107 S. Ct. 2759, 2767 (1987). Defendants argue that, on the face of its Complaint, BART's RICO claims accrued in early 1999, and that the statute of limitations had therefore expired by the time BART filed its Complaint in November 2004.[5]

Under federal law, a claim accrues "when a plaintiff knows or should know of the injury that underlies his cause of action." *Pincay v. Andrews*, 238 F.3d 1106, 1109 (9th Cir. 2001). "[W]here the issue of limitations requires determination of when a claim begins to accrue, the complaint should be dismissed only if the evidence is so clear that there is no genuine factual issue and the determination can be made as a matter of

---

[5] In support of this argument, defendants request that the Court take judicial notice of a February 1999 interoffice memorandum composed by OCR. The memorandum concludes that the SLG/BMC joint venture did not qualify as a DBE. Once again, however, this memorandum is not a public record. The Court therefore finds it inappropriate at this stage of the proceedings to take judicial notice of the memorandum. *See Lee*, 250 F.3d at 688-89.

6

law." *Sisseton-Wahpeton Sioux Tribe v. United States*, 895 F.2d 588, 591 (9th Cir. 1990).

As above, the Court finds defendants' statute of limitations argument to be premature. While BART's Complaint admits that it discovered that SLG/BMC was not a *bona fide* DBE in 1999, it is not fully clear that such a discovery was sufficient to put BART on notice of its injury. Certainly there could be situations in which contractors fail to qualify for DBE status that do not involve fraud or illegal kickback payments. And nothing in BART's Complaint suggests that it had reason to believe in 1999 that the joint venture was fraudulent, rather than a legitimate venture that was simply unable to qualify for DBE status. Thus, at this stage of the proceedings, the Court cannot find that defendants have met their burden of proving the statute of limitations affirmative defense.

### (3) Adequacy of Pleading

Defendants also argue that BART has failed to plead adequately a violation of 18 U.S.C. § 1962(c). Defendants point to two perceived shortcomings in BART's First Amended Complaint. First, defendants argue that BART failed to allege the existence of a RICO enterprise that had some existence beyond that which was necessary to commit the predicate racketeering offenses. Second, defendants argue that BART has failed to allege concrete financial loss to business or property.

As to the former argument, RICO defines the term "enterprise" to include "any individual, partnership, corporation, association, or other legal entity." 18 U.S.C. § 1961(4). In its Complaint, BART alleges that SLG/BMC was a joint venture licensed by the State of California. First Amended Complaint ¶¶ 42-46. This is a sufficient to establish an enterprise under the statute. *See Battlefield Builders, Inc. v. Swango*, 743 F.2d 1060, 1064 (4th Cir. 1984) (allegations of joint real estate venture sufficiently alleged existence of an enterprise). Defendants also cannot prevail with their related argument that SLG/BMC was not an enterprise because it was created for wholly illegitimate reasons. The Supreme Court soundly rejected that argument in *United States v. Turkette*, 452 U.S. 576, 587, 101 S. Ct. 2524, 2531 (1981) ("[N]either the language or the structure of RICO limits its application to legitimate 'enterprises.'")

Defendant's second argument – that BART has failed to allege concrete financial loss to business or property – also fails. Defendants' main contention is that BART was required by law to award contracts to

7

the lowest bidder. Thus, because SLG/BMC performed under its contract at the agreed upon price, defendants argue that BART was not injured by the alleged kickback payments to SLG. While this argument may eventually have merit, it would be inappropriate to accept it, at the pleading stage, without further elaboration of the factual record. To survive a Rule 12(b)(6) motion, BART must make only a very minimal showing of possible injury. *See National Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256, 114 S. Ct. 798, 803 (1994) ("At the pleading stage, general factual allegations of injury from the defendant's conduct may suffice."). Its general allegations of harm are sufficient for the minimal requirements of Rule 12(b)(6). *E.g.*, First Amended Complaint ¶¶ 68 (alleging that BART was injured by the amounts Spencer paid to Talao), 122 (alleging that BART "paid to prime contractors amounts that were excessive" based on defendants' fraud). In addition, the First Amended Complaint, construed in the light most favorable to BART, suggests that the overall price of a construction contract is by no means fixed; through change orders and other mechanisms the price of a construction contract can increase substantially. *See* First Amended Complaint ¶¶ 41 (alleging that Spencer told Talao that in general a $3 million contract would likely become a $5 million contract after change orders), 58 (alleging that cost of BART extension increased from $700 million to $1.5 billion). At a minimum, BART should have the opportunity to establish that SLG/BMC passed on the costs of the kickback payments through changes to its original subcontract price.

### (4) RICO Claims Against McGahan

Defendants also argue that the claims against McGahan, corporate counsel for FWS, must be dismissed because "furnishing a client with ordinary professional assistance . . . does not rise to the level of participation sufficient" to create liability. In *Reves v. Ernst & Young*, 507 U.S. 170, 113 S. Ct. 1163 (1993), the Supreme Court adopted the "operation and management" test for RICO liability: "In order to 'participate, directly or indirectly, in the conduct of [an] enterprise's affairs,' one must have some part in directing those affairs." *Id.* at 179, 113 S. Ct. at 1170. Defendants argue that McGahan, as corporate counsel for FWS, had no role in directing the SLG/BMC joint venture.

BART's Complaint, however, adequately alleges that McGahan had a part in directing the affairs of SLG/BMC to survive the *Reves* standard. BART alleges that, at the creation of the joint venture, McGahan

8

took responsibility for "handling all legal documentation and responding to all of the legal requirements of the joint venture." First Amended Complaint ¶ 42. McGahan thereafter filled out "the application for a joint venture license and submitted it to the Contractors State License Board's office." First Amended Complaint ¶ 43. BART further alleges that, when OCR began investigating SLG/BMC, McGahan drafted a false joint venture agreement in order to prevent OCR's detection of the fraudulent joint venture. First Amended Complaint ¶ 76-77. Finally, BART alleges that McGahan instructed Talao to meet with OCR to attempt to convince it that SLG/BMC was legitimate. First Amended Complaint ¶¶ 86-88.

Thus, this case is distinguishable from *Baumer v. Pauchl*, 8 F.3d 1341 (9th Cir. 1993), in which the Ninth Circuit held that an outside attorney was not liable under RICO. The attorney in that case did not become involved in the fraudulent scheme until six years after it was formed and "his role thereafter was at best sporadic." *Id.* at 1344. In contrast, BART alleges that McGahan was involved throughout the entire existence of the SLG/BMC joint venture, and was an active participant in directing the fraudulent scheme.

### (5) RICO Conspiracy Claims

Defendant's final point of contention with BART's RICO claim is that BART has failed to allege adequately the existence of a RICO conspiracy. Specifically, defendants argue that BART has failed to allege a tacit understanding or agreement between the defendants. BART's Complaint, however, includes multiple allegations that the defendants agreed to use the SLG/BMC joint venture to fraudulently obtain subcontracting work. *See, e.g.*, First Amended Complaint ¶¶ 38-42 (alleging agreement between Spencer, Talao, and McGahan to form joint venture), 53 (alleging agreement on method for paying kickbacks), 54-57 (alleging agreements to bid on SFO subcontracts), 84-88 (alleging agreement to submit falsified legal documentation to OCR).

### B.  State-Law Claims

Defendants also move to dismiss BART's state law claims. For the reasons provided below, the Court GRANTS defendants' motion with respect to BART's claims under California Business and Professions Code § 17200, and DENIES the motion with respect to the remainder of BART's state law claims.

### (1) California Business and Professions Code § 17200

Defendants maintain that BART's claims under California Business and Professions Code § 17200 must be dismissed because BART is not authorized to bring suit for a violation of section 17200. In response, BART claims that it is a "person" and is therefore authorized to bring suit by Business and Professions Code § 17204. The Court finds that BART is not a person within the meaning of section 17204.

Section 17204 authorizes "any person who has suffered injury in fact and has lost money or property as a result of . . . unfair competition" to sue for relief. Cal. Bus. & Prof. Code § 17204. "Person," in turn, is defined as "natural persons, corporations, firms, partnerships, joint stock companies, associations, and other organizations of persons." Cal. Bus. & Prof. Code § 17201. With one exception, the California Courts of Appeal have uniformly held that governmental agencies do not fit within the definition of "person" in section 17201. *See, e.g.*, *Santa Monica Rent Control Bd. v. Bluvshtein*, 230 Cal. App. 3d 308, 318 (1990) (holding rent control board could not bring suit because "[it] is a government agency; it is none of the things included in the definition of a person."); *see also Cal. Med. Ass'n v. Regents of the Univ. of Cal.*, 79 Cal. App. 4th 542, 550-51 (2000) (holding that University could not be sued under section 17200 because, as a public entity, it was not a "person" within the meaning of section 17201); *Trinkle v. Cal. State Lottery*, 71 Cal. App. 4th 1198, 1203 (1999) (holding that lottery commission could not be sued because it was not a "person").

BART attempts to call the above cases into doubt by citing to *Nortica v. State Comp. Ins. Fund*, 70 Cal. App. 4th 911 (1999), in which the court found the State Compensation Insurance Fund ("SCIF"), a public entity, to be a "person" within the meaning of section 17201. *Id.* at 943-44. The holding in that case, however, was based upon the specific statutory provisions that governed SCIF's existence; SCIF was statutorily empowered to act as a private insurer and was subject to suit "in all actions arising out of any act or omission in connection with its business or affairs." *Id.* at 943. In such circumstances, the court found SCIF to qualify as a person under section 17201.

There is no dispute that BART is a public entity. Nor has BART demonstrated that the California legislature intended that it act as a private entity to the same degree as SCIF. Thus, the Court finds that BART

does not qualify as a "person" under section 17201, and is therefore not authorized by bring suit under section 17204.[6]

### (2) Statute of Limitations

Defendants also move to dismiss plaintiff's claims for fraud and those it brought under the California False Claims Act, Cal. Gov. Code § 12654, arguing that both actions are precluded by the relevant statutes of limitations. For the reasons provided above, the Court finds that further factual development is needed to determine precisely when BART's state-law causes of action accrued. It is therefore premature to dismiss those claims on statute of limitations grounds.

///

### C. Claims Against McGahan and Bonar

Defendants also argue that all claims against McGahan and Bonar[7] should be dismissed because, as employees of FWS, BMC, and SLG/BMC, they are incapable of conspiring with their employer. In support of this argument, defendants cite a number of state-law cases holding that "[a]gents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation." *Doctor's Co. v. Superior Court*, 49 Cal. 3d 39, 45 (1989).

As an initial matter, the intracorporate conspiracy doctrine covers only causes of action for conspiracy, and thus does not relieve McGahan and Bonar of liability for the torts they personally committed or participated

---

[6] Section 17204 also authorizes suits by specified public officials "upon the complaint of any board, officer, person, corporation, or association." Cal. Bus. & Prof. Code § 17204. As BART is not represented by one of the specified public officials, it does not contend that it is authorized to bring suit under this provision of section 17204. BART has requested to amend its Complaint, however, both to cure this defect by adding an appropriate public official, as well as to make several other minor corrections. BART may file an amended Complaint before October 14, 2005. The Court reserves judgment on whether such an amendment will cure the defects in its section 17200 claim.

[7] BART's Complaint alleges that Bruce Bonar was "an employee of FWS, and . . . also represented and held himself out as a project manager for BMC." First Amended Complaint ¶ 10.

in. *See Cedric Kushner Promotions, Inc. v. King*, 533 U.S. 158, 163-64, 121 S. Ct. 2087, 2091-92 (2001) (RICO action may include a corporation and its employees); *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999) ("A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf.").

As for the single conspiracy claim alleged in the Complaint – a claim of civil RICO conspiracy in violation of 18 U.S.C. § 1962(d) – the Ninth Circuit has squarely held that the intracorporate conspiracy doctrine does not insulate civil RICO conspiracies. *See Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776, 787 (9th Cir. 1996) ("We agree with the reasoning of our sister circuit, and hold that § 1962(d) applies to intracorporate conspiracies.").

For the foregoing reasons, defendants' motion to dismiss BART's claims against McGahan and Bonar is DENIED.

### D. Failure to Join an Indispensable Party

Finally, defendants argue that this case must be dismissed because BART has failed to join Talao and SLG, both of which it claims are indispensable parties under Rule 19. Even assuming Talao and SLG are necessary parties, however, defendants have provided no reasons why their joinder in this matter is not feasible. *See EEOC v. Peabody Western Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005) ("Rule 19(a) sets forth three circumstances in which joinder is not feasible: when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would destroy the subject matter). Nor is it readily apparent to the Court why defendants could not join Talao and SLG if they desired. Thus, defendants' motion to dismiss under Rule 12(b)(7) is DENIED.

## II. Motion to Strike

"Motions to strike are generally not granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992). In particular, "allegations supplying background or historical material . .

. will not be stricken unless unduly prejudicial to defendant." *Id.* Defendants seek to strike various paragraphs of BART's Complaint: paragraphs 26-28, 31-38 and 48-57. The challenged paragraphs, however, generally provide a description of the origins of the fraudulent scheme that was later used in BART's construction contracts, or a description of the evolution of the fraudulent scheme and the beginnings of the SLG/BMC joint venture. This information may be included in the Complaint as background material.

Defendant's motion to strike is DENIED.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court GRANTS defendants' Motion to Dismiss with respect to plaintiff's claims under the California Business and Professions Code § 17200, and DENIES the remainder of the motion and the Motion to Strike. Plaintiff may file an amended complaint on or before October 14, 2005. [Docket ## 19, 21.]

**IT IS SO ORDERED.**

Dated: September 2, 2005

SUSAN ILLSTON
United States District Judge

