DENNIS J. HERRERA, State Bar #139669
City Attorney
GEORGE K. WONG, State Bar #78225
DAVID L. NORMAN, State Bar #148556
Deputy City Attorneys
1390 Market Street, 5th Floor
San Francisco, California 94102-5408
Telephone:    (415) 554-3989
Facsimile:     (415) 255-0733
E-Mail:         david.norman@sfgov.org

Attorneys for City and County of San Francisco;
San Francisco District Attorney's Office;
James Cheng; Linda Chin; James Fields, Balmore Hernandez, Veronica Ng, Ivar Satero and Preston Tom

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT**, a multi-county rapid transit district established and existing under the laws of California,<br><br>Plaintiff,<br><br>vs.<br><br>**WILLIAM D. SPENCER**, an individual; **F.W. SPENCER & SON, INC.**, a California corporation; **BRISBANE MECHANICAL CO.**, a California corporation; **WILLIAM MCGAHAN**, an individual; **BRUCE R. BONAR**, an individual; and **DOES 1-25**,<br><br>Defendant. | Case No.  C 04 4632 SI<br><br>**MOTION TO QUASH SUBPOENAS SERVED ON (1) THE CITY AND COUNTY OF SAN FRANCISCO, (2) THE SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE AND FOR SAN FRANCISCO'S' EMPLOYEES: (3) JAMES CHENG; (4) LINDA CHIN; (5) JAMES FIELDS; (6) BALMORE HERNANDEZ; (7) VERONICA NG; (8) IVAR SATERO; AND (9) PRESTON TOM;**<br><br>Date:     September 29, 2006<br>Time:    9:00 a.m.<br>Judge:   Hon. Susan Illston<br>Place:    Courtroom 10, 19th Floor<br>              450 Golden Gate Ave.<br>              San Francisco, CA |

CITY'S Mot. to Quash Subpoenas.
Case No.  C-04-04632 SI

N:\CONSTR\LI2006\021390\00394419.DOC

# TABLE OF CONTENTS

CITY'S Mot. to Quash Subpoenas.  i  N:\CONSTR\LI2006\021390\00394419.DOC
Case No. C-04-04632 SI

# TABLE OF AUTHORITIES

CITY'S Mot. to Quash Subpoenas.
Case No. C-04-04632 SI

ii

N:\CONSTR\LI2006\021390\00394419.DOC

## I. INTRODUCTION & FACTUAL BACKGROUND

### A. The City's Action vs. The Spencer Parties

Beginning in September 2002, the City and County of San Francisco (the "City") has pursued a lawsuit against William D. Spencer, his companies F.W. Spencer & Son, Inc. (FWS") and Brisbane Mechanical Company ("BMC"), FWS's president Bruce Bonar and FWS's and BMC's counsel William McGahan (together, "the Spencer Parties").  That action, which was first filed in this District; is now captioned "Public Works Cases," California Judicial Council Coordination Proceeding 4379; and is venued in Contra Costa County Superior Court.  On July 24, 2006, the City and the Spencer Parties participated in mediation which settled that action, subject to approval by the San Francisco Board Of Supervisors.

On August 1, 2006, the Spencer Parties issued a subpoena in this present BART action seeking records from the San Francisco District Attorney's Office related to its investigation of San Luis Gonzaga Construction, Inc. ("SLG") and its owners Virgilio and Geradina Talao.  On August 2, 2006, the Spencer Parties issued a number of subpoenas in this same action seeking to depose the City and seven of its employees, including: James Cheng, Linda Chin, James Fields, Balmore Hernandez, Veronica Ng, Ivar Satero and Preston Tom.  Five of those nine depositions are noticed for August 23, 2006, with the remaining four depositions to take place on August 24 and 28, 2006.  Evidently, the Spencer parties are scrambling to take those depositions before the discovery cutoff in the action, which is set for August 29, 2006; and for several reasons, both the City, the San Francisco District Attorney's Office and BART have filed objections to those depositions, or productions, going forward.

First, in their haste, the Spencer Parties failed to personally serve any of the individual deponents.  Instead, the process server simply left the subpoenas at the witnesses' places of business.

Second, the Spencer Defendants failed to provide the City, the San Francisco District Attorney's Office and the City's individual employees with the witness fees required under Federal Rule Of Civil Procedure Rule 45(b)(1).  Thus, each of those subpoenas must be quashed.

Third, concerning the subpoena served on the City, that subpoena also must be quashed where the scope of the subpoena is unreasonably burdensome and provides inadequate time for the City to comply with the subpoena.  The documents sought include 19 categories of records, for eight different San Francisco public work projects and include literally hundreds of boxes of records located in twelve different facilities.  The Spencer parties also seeks to depose the City's witnesses regarding 49 different topic areas or categories which largely resemble the topics the Spencer Parties had noticed for deposition in the City's separate action.  To allow the Spencer Parties merely to re-serve that notice on the City and to impose that same burden in BART's action where the City's projects have far lesser, if any relevance, is pernicious.  Further, the City has met and conferred with the Spencer Parties' counsel concerning the limited relevance the subjects of those subpoenas have in this action, and the Spencer Parties' only response concerns the limited issues raised by BART in one deposition concerning one airport contract, SFIA Contract No. 5600.C.  The Spencer Parties will not discuss the relevance of the subpoenas served on the San Francisco District Attorney's Office and City personnel concerning the Moscone Center Expansion Project, the Jail and Airport projects other than the 5600.C project.  For that reason, the Court must also quash the Spencer Parties' subpoena on the City.

Lastly, the timing of the depositions is absurd.  The Spencer Parties seek for San Francisco District Attorney's office to produce records, and to depose the City's Persons Most Knowledgeable, and three other City witnesses – James Cheng, Balmore Hernandez and Veronica Ng, all on August 23, 2006.  The City should not be forced to prepare its witnesses and appear for deposition under such circumstances because the Spencer Parties have been dilatory and wish to cram those depositions in before the August 29th cutoff.  Further, several of those witnesses are also on vacation, including Ms. Chin and Mr. Satero.

**B.     The District Attorney's Office's Investigation Regarding San Luis Gonzaga Construction, Inc. And The Spencer Parties.**

The San Francisco District Attorney's Office has an open criminal investigation into claims of theft public funds and false claims that pertains to government contracts at the Airport.  Apart from the District Attorney's Office 's investigation, (1) the City brought lawsuits against

CITY'S Mot. to Quash Subpoenas.
Case No.  C-04-04632 SI

2

N:\CONSTR\LI2006\021390\00394419.DOC

both Tutor-Saliba Corporation and the Spencer Parties for racketeering and for frauds related to the award and performance of government contracts at the Airport; and (2) BART brought a lawsuit against the Spencer Parties for racketeering and for frauds on BART's contracts.  The San Francisco District Attorney's Office was never a party to the City's or BART's lawsuits.  Virgilio and Geradina Talao (the "Talaos") are now potential witnesses in BART's litigation.

As part of the San Francisco District Attorney's Office's criminal investigation, Assistant District Attorney Tom Bogott and an investigator from the District Attorney's Office interviewed the Talaos on 12/05/01, 12/06/01, 12/11/01, 01/23/02, 01/24/02, 01/31/02, 02/07/02, 02/12/02, 02/21/02, 03/04/02, and 03/07/02.  Counsel for both the City and Tutor-Saliba have previously requested access to the documents in question; but all such requests were denied because the criminal investigative file is work product and confidential.  The investigation remains open.

The Spencer Parties' subpoena also is overbroad where it seeks all documents that relate to interviews of any person by the San Francisco District Attorney's Office concerning frauds at the Airport and are unrelated to BART's projects.  The subpoena is attached as an exhibit to the Norman Declaration.

## II. ARGUMENT

### A. The Court Must Quash The Spencer Parties' Subpoenas For Failure To Comply With Rule 45.

#### 1. The Court Must Quash The Subpoenas Where The Spencer Parties Did Not Personally Serve The City's Employees.

Federal Rule of Civil Procedure Rule 45 requires that a subpoena shall be made by delivering a copy of the subpoena upon the person named therein; and if the person's attendance is commanded by tendering to that person the fees for one day's attendance and the mileage allowed by law.  (FRCivP Rule 45.)  Generally, personal service is required. (9A C. Wright & A. Miller, *Federal Practice and Procedure: Civil 2d* § 2454 (1995); Schwarzer, Tashima & Wagstaffe, Cal. Practice Guide : FED. CIV. PRO. BEFORE TRIAL (The Rutter Group 2006) §11:2271- 2272; *Jin v. Rodriguez, Slip Copy*, 2006 WL 39091 (C.A. 9th (E.D. Cal.) January 5, 2006).  The Spencer Parties made no attempt to serve personally the City's individual employees,

nor were Messrs. Cheng, Fields, Hernandez, Satero, Ms. Chin and/or Ms. Ng served personally. Accordingly the subpoenas are invalid and must be quashed.

> **2. The Court Must Quash The Subpoenas Where The Spencer Parties Did Not Include Witness Fees To Either The City or The City's Employees.**

As noted above, Rule 45 requires that the fees for one day's attendance and the mileage allowed by law must accompany a subpoena. (FRCivP Rule 45.) Where those fees are not tendered, the subpoenas, again, are invalid. (9A C. Wright & A. Miller, *Federal Practice and Procedure: Civil 2d* § 2454 (1995); Schwarzer, Tashima & Wagstaffe, Cal. Practice Guide : FED. CIV. PRO. BEFORE TRIAL (The Rutter Group 2006) §11:2279; *CF&I Steel Corp. v. Mitsui & Co. (USA) Inc*., 713 F.2d 494, 496 (9th Cir, 1983); *Jin v. Rodriguez, Slip Copy*, 2006 WL 39091 (E.D. Cal. January 5, 2006). Because The Spencer Parties failed to provide the City, the San Francisco District Attorney's Office and the City's individual employees with the required witness fees and mileage, the subpoenas are invalid and must be quashed.

> **B. The Court Must Quash The Spencer Parties' Subpoenas On CITY Where It Fails To Provide CITY With Reasonable Notice & Imposes Undue Burden On The City.**

The Court must quash a subpoena upon finding that it fails to allow reasonable time for compliance or otherwise subjects the witness to undue burden. (Rule 45(c)(3)(A)(i)). Discovery may be refused where the burden of the proposed discovery outweighs its likely benefit taking into account: (a) the needs of the case; (b) the parties resources; (c) the importance of the issues at stake; and (d) the role of the proposed discovery in resolving those rules. (FRCP Rule 26(b)(2); *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 714( 1st Cir. 1998) Further, an abusively drawn subpoena may be quashed because it imposes an undue burden on the witness and is drawn way too broad without an attempt being made to try to tailor the information requests to the immediate needs of the case. (Schwarzer, Tashima & Wagstaffe, Cal. Practice Guide : FED. CIV. PRO. BEFORE TRIAL, *supra*, §11:2303 - 11.2304); *Mattel Inc. v. Walking Mountain Products*, 353 F.3d 792, 813 (9th Cir. 2003).

The gist of BART's action against the Spencer Parties is BART's claim that FWS and its owner perpetrated a scheme to defraud BART by claiming DBE participation credit for the joint

venture of San Luis Gonzaga Construction, Inc. ("SLG") and BMC ("SLG/BMC") on BART's Expansion To SFO Projects, a scheme that the Spencer Parties had used previously over a course of years to defraud the City.  BART cannot recover any monies for the City; and in fact, the City has tentatively settled its action with the Spencer Parties.  Accordingly, the role of the City, its employees and projects, is relegated to providing a factual predicate to the Spencer Parties' use of the SLG/BMC joint venture to claim MBE participation prior to the Spencer Defendants' involvement on the BART projects.  Yet, the Spencer Parties seek to depose what could be a dozen City witnesses on topics so far a field, that they would have little, or no, relevance in the present action.  This includes the Spencer Defendants' request to depose the City concerning its review of: (a) unsuccessful bids for the projects that were ultimately awarded to prime contractors utilizing SLG/BMC as a MBE subcontractor (*See*, topics 2, 5, 7, 12, 18, 24, 27, 28, 30, 33, 36, 39, 41 and 42 ); (b) the City's application of its MBE/WBE Ordinance to each bid for those same contracts, including unsuccessful bids (*See*, topics 4, 9, 15, 21, 27, 33, 39 and 45); (c) the City's criteria for awarding its contracts (*See*, topics 14, 20, 26, 32, 38 and 44 ); (d)  the City's and its Human Rights Commissions ("HRC") approval and award of MBE participation credit for the joint venture of SLG and Inet on the 5520.J project that is never references in BART's complaint (*See*, topics 11- 14); and (e) the joint ventures between Troy's Contracting, Inc. and BMC ("Troy's/BMC") and A. Answer, Inc. and BMC ("Answer/BMC") involvement on the airport projects which also are never mentioned in BART's complaint (*See*, production request nos. 2, 3 and 8).  Certainly the SLG/Inet contract and Troy's/BMC and Answer/BMC joint ventures  – (d) and (e) above, have nothing to do with BART's action.  Also, it is unlikely that the first three issues (a) – (c) above have little to do with BART's action.  Yet the Spencer Parties have served its subpoenas intending to harass the City by asking the City to prepare witnesses on subjects that perhaps may have been relevant to the City's action against the Spencer Parties, but have no relevance it the present BART action.  As further support of their abusive practice, first in the subpoena for the City's James Cheng, the Spencer Parties seek to depose this City's project manager on the Jail Project concerning "non-HRC contract award issues, and all other claims issues pertaining to the San Francisco Jail No. 3 Replacement Project".  Second,  in the subpoena

1   for the City's Balmore Hernandez, the Spencer Parties seek to depose this City's project manager

2   on the Moscone Center Project concerning "non-HRC contract award issues, and all other claims

3   issues pertaining to the San Francisco Moscone Center Project".  Third, in the subpoena for the

4   City's Ivar Satero, the Spencer Parties seek to depose one of the City's project manager on the

5   airport projects concerning "non-HRC contract award issues, and all other claims issues

6   pertaining to the San Francisco International Airport Mater Plan contracts, specifically related to

7   Contract Nos. 5500.J, 5600.C, 5602.A, 5670.A, 5701.A, 5750.B and 5520.J."  The Spencer

8   Parties can show no relevance to the City's awards or other claims on those projects, and the only

9   reason the Spencer Parties seek to take those depositions is to both burden the City, and seek

10  discovery no longer permitted in the City's action against the Spencer Parties.

11         Under Rule 45 the Court must be cognizant of the expense and intrusive nature of the

12  subpoenas on non-party witnesses *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d 774, 779

13  (9th Cir. 1994)   Here, the Spencer Parties are literally seeking hundreds of boxes of records,

14  containing thousands of documents, and the City's witnesses to review such records, for subjects

15  that are not referenced in, or are referenced in but one paragraph, of BART's 40-page, 177

16  paragraph complaint.[1]  (*See*, FRCivP 45(c)(A)(ii); Schwarzer, Tashima & Wagstaffe, Cal.

17  Practice Guide : FED. CIV. PRO. BEFORE TRIAL, *supra*, §11:2303  - 11.2304); and *Mattel*

18  *Inc. v. Walking Mountain Products*, *supra*, 353 F.3d 792, 813; and *Exxon Shipping Co.* at p. 779.

19  "the Federal Rules authorize a district court to modify or even quash a subpoena in order to

20  "protect a party or person from annoyance, embarrassment, oppression or undue burden and

21  expenses.")  This Court should exercise this authority, especially where it is being propounded

22  for improper purposes such as to gain discovery improperly in this separate action.

---

[1] Within its Second Amended Complaint, BART never references the 5520.J project, and BART only mentions the City's Jail Replacement Project and Moscone Center project at paragraph 120 in its Second Amended Complaint.  Yet, The Spencer Parties seek to depose Ms. Chin, Ms. Ng, Mr. Tom, Mr. Cheng and the City's persons most knowledgeable concerning 12 topics that concern those projects.  (*See*, subpoenas served on Veronica Ng and James Cheng concerning the Jail Replacement project; the subpoenas served on Linda Chin and Balmore Hernandez concerning the Moscone Center project; and the subpoena served on CITY for topic numbers 36 – 47.)

CITY'S Mot. to Quash Subpoenas.                           6                              N:\CONSTR\LI2006\021390\00394419.DOC
Case No.  C-04-04632 SI

**C. The Court Must Quash The Spencer Parties' Subpoena On The San Francisco District Attorney's Office Where Its Investigative Files Are Privileged.**

In a similar lawsuit brought by the City against Tutor-Saliba Corporation in this District, Tutor-Saliba subpoenaed the records of the San Francisco District Attorney's Office in June 2005 pertaining to the District Attorney's Office's interviews and investigations of Virgilio Talao and the Spencer Parties.  The District Attorney's Office moved to quash that subpoena contending any records from, or documents pertaining to, its investigations are: (1) privileged under the attorney/client and attorney work product privileges as provided in *Hickman v. Taylor* (1947) 329 U.S. 495, and *U.S. v. Nobels*, (1975) 422 U.S. 225; and both the official information privilege and investigative file privilege of Federal Rules of Evidence, Chapter 5.  Similar protections are also afforded to the San Francisco District Attorney's Office through the California Official Information privilege set forth at California Evidence Code section 1040(b)(2). (*See*, also *County of Orange v. Superior Court* (Feilong Wu et al), 79 CalApp.4th 759 (2000);  *Rivero v. Superior Court (San Francisco)* 54 Cal.App.4th 1048 (1997); Cal. Code of Civ. Proc. Section 1987.1, and *Monarch Healthcare v. Superior Court*, 78 Cal.App.4th 1282, 1284 (2000).  In the Tutor-Saliba action, this Court upheld such privileges and quashed Tutor-Saliba's subpoena.  For the same reasons, the Court should do the same in this instance.

### 1. The Documents in the Criminal Investigation File Are Work Product.

Federal Rule of Civil Procedure 45(c)(3)(A)(iii) provides in pertinent part that the court by which a subpoena was issued shall quash or modify the subpoena if it requires disclosure of privileged or other protected matter and no exception or waiver applies.  The criminal investigation file, which includes witness statements and documents procured to advance the investigation, is protected work product.

#### a. The Criminal Investigation File Contains Interviews That Reflect Attorney Mental Impressions.

In *Hickman v. Taylor*, the United States Supreme Court determined that "attorney work product" included "interviews, statements, memoranda, correspondence, briefs, mental impressions, [and] personal beliefs." (*Hickman v. Taylor*, (1947) 329 U.S. 495, 511.) In *U.S. v.*

*Nobles*, the U.S. Supreme Court extended the *Hickman v. Taylor* attorney work product doctrine to investigators and other agents working on the attorney's behalf. (*U.S. v. Nobles* (1975) 422 U.S. 225, 239: "[S]tatements of prosecution witnesses taken by defense investigator are work product, but lose protected status if defense seeks to use information in court".)

Commencement of litigation is not required. All that is required is the possibility of litigation. (*In re Grand Jury Investigation,* 599 F.2nd 1224, 1229 (3rd Cir. 1979).) In fact, the events giving rise to litigation need not have occurred at the time of investigation. (*United States v. Adlman* 134 F. 3rd 1194, 1200 (2nd Cir. 1998).) Here, Assistant District Attorney Thomas Bogott in charge of the criminal investigation of many persons suspected of theft of public funds at the Airport. As part of this investigation, Mr. Bogott, along with a District Attorney Investigator, conducted numerous interviews of the Talaos. Mr. Bogott gathered documents relevant to the investigation, shaped the direction of the investigation and continues to analyze whether a charging decision is appropriate. The investigation remains open so that as additional information becomes available an informed charging decision may be made.

Mr. Bogott's line of questioning into carefully chosen subject areas, concerning different suspects will disclose Mr. Bogott's mental impressions, strategy and legal theories pertaining to a charging decision.

Further, the identity and organization of the documents Mr. Bogott chose to use during the interviews is work product because they reflect his opinion about what is and is not important to the investigation. Accordingly, the interviews and the documents should be absolutely privileged. (*See, Spork v. Peil,* 759 F. 2nd 312, 317-318 (3rd Cir. 1985) which provides that while individual documents were not work product, selection process itself representing counsel's mental impressions and legal opinions as to how evidence and documents relate to issues and defenses rendered it absolutely privileged.)

The District Attorney's Office interviewed the Talaos during the course of an ongoing criminal investigation, rendering all interviews and statements collected entitled to protection by the work product doctrine. (*Hickman v. Taylor*, *supra*, 329 U.S. at p. 511; *U.S. v. Nobles, supra*, 422 U.S. at p. 239.) This protection necessitates that the subpoena be quashed.

### 2.     Discovery Pertaining To The Talaos Is Available From Other Sources.

Although work product that discloses the mental impresses of an attorney should be absolutely privileged, there is no indication that the information requested is unavailable from other sources.  (*Navajo Nation v. Confederated Tribes and Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046(9th Cir. 2003); *Holmgren v. State Farm Mutual Automobile Insurance Co.,* 976 F.2d 573, 576(9th Cir. 1992).)  In *Navajo Nation*, the Ninth Circuit held that "[a] party is entitled to discovery of attorney work-product only if the requested party demonstrates that the requested information is not available from other sources."  (*Id*. at p. 1046, motion to compel discovery was denied because the information was obtainable from another source.)

The primary purpose of the work product doctrine is to prevent the exploitation of a party's efforts in preparing for litigation.  (*Admiral Ins. Co. v. United States District Court*, 881 F.2nd 1486, 1494 (9th Cir. 1989).)  The District Attorney's Office has done an enormous amount of work during the criminal investigation.  Because the Spencer Parties may conduct their own discovery pertaining to the Talaos, the motion to quash should be granted.

### 3.     The Criminal Investigation File Is Protected By The Official Information Privilege.

Federal common law recognizes a qualified privilege for official information.  (*Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (C.A 9th (Cal.) 1990.)  To determine whether the information sought is privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages.  If the latter is greater, the privilege bars discovery.  (*Jepsen v. Florida Bo. of Regents*, 610 F.2d 1379, 1384-85 (5th Cir. 1980); *Zaustinsky v. University of California*, 96 F.R.D. 622, 625 (DC Cal. 1983).)  Here, the focus of the criminal investigation is not the Talaos.  To the contrary, the Talaos' statements provide evidence of wrongdoing by other perpetrators.  Release of the confidential information contained in the file would alert the subjects of the investigation to the evidence adduced in the investigation and jeopardize a future charging decision.

The District Attorney's Office requires prosecutorial independence to fulfill its critical function of investigating and, where appropriate, prosecuting criminal defendants.  To perform

these essential public duties, the District Attorney's Office possesses independent and constitutionally and statutorily designated investigative and prosecutorial functions. (*See*, Cal. Government Code Section 25303.) Compelled disclosure of the criminal investigative file will obstruct the investigatory function of the District Attorney's Office in contravention of Section 25303. Moreover, there are no benefits to disclosure because there is no indication that Spencer Parties cannot obtain discovery from other sources.

Like the federal common law official information privilege, California Evidence Code Section 1040(b)(2) also protects official information from disclosure when the public interest in preserving confidentiality outweighs disclosure. (*County of Orange v. Superior Court (Wu)*, 79 Cal. App. 4th 759 (4th Dist. 2000).) Federal courts should attempt to accommodate state privilege in federal question cases unless doing so would impair a federal right. (*Leon v. County of San Diego,* 202 FRD 631, 635 (SD CA 2001). Accordingly, both federal and state law compel the conclusion that the motion to quash should be granted.

### 4. Production Would Be Unreasonable As The Requested Documents Are Privileged.

5 U.S.C. 522(b)(7) shows that there is a special "privilege" that attaches to law enforcement documents when it specifically carves out an exception to information available to the public. 5 U.S.C. 522(b)(7) states this exception, in pertinent part, as follows:

> "(b) This section does not apply to matters that are-. . . (7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with law enforcement proceedings, . . . (E) would disclose techniques and procedures for law enforcement investigations . . . or would disclose guidelines for law enforcement investigations . . .or could reasonably be expected to endanger the life or physical safety of any individual . . ."

The privileged investigative file is not available to the public and should not be produced during discovery.

III.     CONCLUSION

For the above state reasons, the Court must quash each of the Spencer Parties' subpoenas.

Dated:  August 15, 2006                             Respectfully submitted,

                                                    Dennis J. Herrera
                                                    City Attorney
                                                    Joanne Hoeper, Chief Trial Attorney
                                                    James M. Emery, Deputy City Attorney
                                                    David L. Norman, Deputy City Attorney
                                                    Deputy City Attorneys


                                        By:_____/s/_____
                                                    DAVID L. NORMAN

                                                    Attorneys for
                                                    THE SAN FRANCISCO DISTRICT
                                                    ATTORNEY'S OFFICE; THE CITY AND
                                                    COUNTY OF SAN FRANCISCO AND ITS
                                                    EMPLOYEES LINDA CHIN, JAMES CHENG,
                                                    JAMES FIELDS, BALMORE HERNANDEZ,
                                                    VERONICA NG, IVAR SATERO AND
                                                    PRESTON TOM