IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>WILLIAM D. SPENCER, et al.,<br><br>　　　　　Defendants.<br>　　　　　　　　　　　　　　　　　　　／ | No. C 04-04632 SI<br><br>**ORDER RE: DISCOVERY** |

Plaintiff San Francisco Bay Area Rapid Transit District ("BART") and defendants William D. Spencer, et al. have submitted letter briefs requesting the Court's assistance in resolving a discovery dispute. On January 9, 2006, BART served its First Set of Requests for Production of Documents. Defendants served their collective responses on March 2, 2006. BART seeks to compel production of several documents from the First Set of Requests, including tax returns, financial records for FWS, accounts receivable ledgers and additional electronic documents. BART further requests that defendants provide a more detailed privilege log.

The parties stipulated to extend the final date on which the parties could file discovery motions to September 25, 2006. BART's letter brief was filed on September 25, 2006.

**DISCUSSION**

**I.　Tax Returns for BMC, FWS, Spencer, McGahan, and Bonar**

Both parties recognize that tax returns are subject to a qualified privilege. The Ninth Circuit has recognized that a "public policy against unnecessary public disclosure [of tax returns] arises from the need, if the tax laws are to function properly, to encourage taxpayers to file complete and accurate

returns." *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975). Accordingly, the Court can only require the production of tax returns if they are relevant, and if there is a compelling interest because the information is not otherwise obtainable. *Aliotti v. Vessel Senora*, 217 F.R.D. 496 (N.D. Cal. 2003).

BART argues that the tax returns are relevant because BART alleges that defendants profited from their scheme to defraud BART, as "fraudulently-induced payments made to SLG/BMC flowed through the joint venture to the defendants." BART maintains that it needs to "follow the money" to show each defendants' income and from where it derived. Additionally, BART argues that this information is unique and not readily obtainable from another source.

Defendants counter that BART has failed to explain how the tax returns will indicate whether the allegedly fraudulently induced payments made to SLG/BMC flowed to defendants. Defendants further argue that there are other documents that BART possesses that contain the information it is seeking. For example, defendants argue that BART has this information from copies of job cost detail reports and payment applications for each project. The job cost detail reports explain profit or loss in relation to each project for each task performed. Additionally, payment applications show how much money was received and paid out for the work on each project.

The Court is persuaded by defendants' arguments. There is a strong public policy disfavoring disclosure of tax returns. *See Premium Serv. Corp.*, 511 F.2d at 229. The requested material may be available through the job cost detail reports and the payment applications, which defendants have already provided to BART. More importantly, BART already has the financial records of SLG/BMC, and will be obtaining the financial records of FWS pursuant to this order. *See infra.* Moreover, the tax returns probably would not show how much was earned through each specific job; they would only state a total sum earned per employer. For the foregoing reasons the Court DENIES BART's motion to compel production of tax returns.

## II. Financial Records

BART also requests the banking and accounting records for defendant FWS. BART argues these records would allow it to determine the nature and amount of money FWS received as a result of the BART projects and the amount paid by FWS to the joint venture, SLG, Virgilio Talao, and other individual defendants.

Defendants argue the requested material is irrelevant because they have already produced financial documents for SLG/BMC, the allegedly fraudulent entity. Defendants further argue that this information is not relevant because FWS was never a subcontractor on the projects, and all of the information that is needed can be found by looking at the SLG/BMC records. Additionally, defendants argue that this information is privileged because it contains trade secrets.

The Court finds that the requested information is relevant to the instant action. BART alleges in its complaint that FWS paid "kickbacks" to SLG for the use of the DBE status. FWS's financial information is plainly relevant to determine whether FWS actually paid such kickbacks. Defendants' apprehension of the financial records becoming public can be resolved by designating this information as confidential or highly confidential pursuant to the protective order. The Court hereby GRANTS BART's request for FWS's financial statements.

## III. Accounts Receivable

BART also requests the accounts receivable ledgers for all of the entities in this suit. Defendants maintain that accounts receivable ledgers do not exist and that the only financial records maintained by defendants are the cost detail analyses and payment applications that they already provided. Because no such documents exist, the Court DENIES BART's request.[1]

---

[1] BART also requested a cost detail report for the Concord project and other information regarding Contract Nos. 12YC-120 and 12YS-130. Defendants have already agreed to supply this information in the event that it was not already supplied to BART.

**IV.     Electronic Documents**

BART argues that defendants did not produce all requested electronic documents during discovery. Defendants reply that all electronic documents in existence have already been provided. BART counters that defense counsel have not conducted a proper inquiry to determine whether or not all electronic documents were produced.

The Court ORDERS defendants to verify that all requested electronic documents have been provided to BART, and ORDERS defendants to produce any electronic documents that have not yet been provided.

**V.     Privilege Log**

BART argues that the privilege log provided by defendants is inadequate because the log does not describe each document, which would enable BART to assess the applicability of the privilege asserted. Defendants' privilege log contains five columns: (1) document dates, (2) description, (3) author(s), (4) recipient(s), and (5) basis for privilege. *See* Plaintiff's Letter Brief, Exh. F. The second through fifth entries in the log do not list specific documents, but instead describe broad groups of documents. *See id.* For example, the second entry contains only the following information under each column: (1) "1990-present"; (2) "Correspondence"; (3) "McInerney & Dillon, P.C."; (4) "F.W. Spenser & Son, Inc., Brisbane Mechanical Company and/or any parent, subsidiary, siter subsidiary, affiliated company, officers, directors, employees, agents, representatives, accountant, attorneys, successors and assigns"; (5) "Attorney work product; Attorney client privilege." *Id.*

Defendants argue that the descriptions given are sufficient because BART requested broad categories of documents, from 1990 to the present, large numbers of which are privileged. A privilege log describing each specific document, defendants argue, "would be hundreds, if not thousands of pages in length." *See* Defs.' Letter Br. 5.

A proponent of a privilege log must "make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing

4

information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed. R. Civ. P. 26(b)(5). However, voluminous documents may be described by category. *See id.*, advisory committee's note.

Because BART did not attach its document requests to its letter brief, the Court cannot determine whether the privilege log meets the required level of specificity. For example, if BART had requested all correspondence between defense counsel McInerney & Dillon and the defendants from 1990 to present, such correspondence would fall within the realm of the attorney client privilege, and because this is such a broad category, the description given by defendants would be adequate. Because BART did not provide the Court with its requests for production, the Court cannot evaluate whether or not the descriptions are sufficient. For the foregoing reasons the Court hereby DENIES BART's request for a more detailed privilege log.

## CONCLUSION

Having considered the papers submitted, the Court hereby DENIES in part and GRANTS in part plaintiff's motion to compel discovery. (Docket # 93)

**IT IS SO ORDERED.**


Susan Illston

5

Dated: October 23, 2006

_____
SUSAN ILLSTON
United States District Judge