IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM D. SPENCER, et al.,<br><br>Defendants.                              / | No. C 04-04632 SI<br><br>**ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION AND DENYING MOTION TO QUASH** |

On September 25, 2006, the Court issued an order granting a motion by the non-party City and County of San Francisco ("the City") to quash nine subpoenas served by the defendants William D. Spencer, et al., on the City, the San Francisco District Attorney's Office ("DAO"), and seven individual City employees. The Court granted the motion to quash based on defendants' failure to make personal service and provide witness fees. In anticipation of proper re-service, the Court addressed all of the City's arguments supporting its motion to quash. The Court concluded that upon proper service, the subpoenas would not be quashed.

On October 3, 2006, defendants re-served two of the subpoenas, one on the City, and one on the DAO. By letter brief, on October 5, 2006, the City seeks leave to file a motion for reconsideration of the Court's September 25, 2006 Order, with respect to the subpoena served on the DAO. On October 11, 2006, the City filed an additional letter brief moving to quash the re-served subpoenas on various grounds.

**BACKGROUND**

Plaintiff, San Francisco Bay Area Rapid Transit District ("BART"), seeks to recover from William D. Spencer, his companies, and their employees, for damages it claims were caused by the defendants' fraudulent practices in connection with work performed under BART construction subcontracts. BART alleges that the defendants charged it for thousands of dollars in fees that were used to pay "kickbacks" to another construction firm.

According to BART's Complaint, Spencer is the sole owner of two San Francisco Bay Area construction firms: F.W. Spencer and Son, Inc. ("FWS"); and Brisbane Mechanical Co. ("BMC").[1] In 1996, Spencer met with Virgilio Talao ("Talao"), the owner and operator of San Luis Gonzaga Construction Company ("SLG"). At this meeting, Spencer proposed that the two enter into a joint venture to bid on construction subcontracts.

The purported rationale for this joint venture was SLG's status as a minority-owned company. Because government contracts usually contain a requirement that prime contractors make good faith efforts to use disadvantaged business enterprises ("DBEs") in performing construction contracts, partnering with SLG would generally make a company more attractive to a prime contractor for subcontracting work. With this goal in mind, Spencer and Talao formed a joint venture between SLG and BMC, which they called SLG/Brisbane Mechanical JV ("SLG/BMC").

The Complaint alleges that, while nominally a joint venture that qualified for DBE participation credit, SLG/BMC did not operate as such. Instead, Spencer and Talao agreed to an arrangement in which Spencer would pay SLG for the use of its name and DBE status, while Spencer's company would perform the actual construction work. Talao's only responsibility under the agreement was to convince the awarding agency that SLG/BMC was a legitimate DBE joint venture. He was to attend all pre-bid meetings and speak as if he were the controlling partner of SLG/BMC. In return, Talao received 1-3% of the amount of the subcontract – 3% of subcontracts worth up to $1 million, 2% of subcontracts worth between $2 and $3 million, and 1% of subcontracts for more than $3 million.

Spencer's role in the joint venture was to perform the construction work. His company provided

---

[1] The following facts are taken from plaintiff's First Amended Complaint.

the financing, labor, and equipment for the construction job, and received progress payments under the subcontract. When Spencer's company received these payments, Talao would create an after-the-fact invoice for "Engineering Services" for the agreed upon percentage of the payment. He would then submit the invoice to either FWS or BMC and Spencer would pay SLG from a bank account held in the name of SLG/BMC.

In 1999, Spencer and Talao agreed to use SLG/BMC to bid on subcontracts for planned construction at San Francisco International Airport ("SFO"). Those plans included expanding and modernizing the airport through the construction of a new international terminal and new parking garages. They also included the construction of a BART line extension to SFO, covering both design and construction of the line as well as design and construction of the South San Francisco, San Bruno, and Millbrae BART stations. All told, the prime contracts for the BART extension initially totaled over $700 million, and the total cost of the project has now reached $1.5 billion.

In 2003 BART learned from the San Francisco City Attorney's Office that the BART projects had been a target of the fraudulent scheme perpetrated by the defendants. BART subsequently conducted an investigation and filed this lawsuit in November 2004.

**DISCUSSION**

**A.    Reconsideration of the Court's Order with respect to the DAO**

In the Northern District of California, no motion for reconsideration may be brought without leave of court. *See* Civil L.R. 7-9(a). Under Civil Local Rule 7-9, the party seeking leave must specifically show: (1) that, at the time of the filing of the motion for leave, a material difference in fact or law exists from that which was presented to the court before entry of the interlocutory order for which the reconsideration is sought, and that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or (2) the emergence of new material facts or a change of law occurring after the time of such order; or (3) a manifest failure by the court to consider material facts or dispositive legal arguments which were presented to the court before such interlocutory order. *See* Civil L.R. 7-9(b). Moreover, the motion for leave may not repeat any oral or written argument made by the moving party in support of or opposition to the interlocutory

1 order of which the party seeks reconsideration. *See* Civil L.R. 7-9(c).

2 The City seeks leave pursuant to the third clause of Civil Local Rule 7-9(b), arguing a manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before it issued the September 25, 2006 Order. The City argues that the Court failed to address the DAO's claimed investigative privilege, and that to the extent the Court addressed that privilege, the Court did not engage in the requisite balancing of interests.

The City's original motion to quash mentions the "official information privilege and investigative file privilege of Federal Rules of Evidence, Chapter 5." Aug. 15, 2006 Letter Br. at 6. The motion only discusses, however, the federal common law qualified privilege for official information, and the official information privilege of California Evidence Code Section 1040(b)(2). *See id.* at 8-9. As the City asserted in its original motion, both sources of the privilege require the Court to "weigh the potential benefits of disclosure against the potential disadvantages." *Id.* at 9. The Court engaged in this weighing in the September 25, 2006 Order. *See* Order at 4:23-5:4.

The City now argues that "there is a plethora of other DAO interests and public policy interests, which the Court seemingly failed to consider." Oct. 11, 2006 City Letter at 3. The Court has painstakingly reviewed the City's original motion to quash, and finds only two interests arguably identified: (1) "Release of the confidential information contained in the file would alert the subjects of the investigation to the evidence adduced in the investigation and jeopardize a future charging decision"; and (2) "Compelled disclosure of the criminal investigative file will obstruct the investigatory function of the District Attorney's Office in contravention of Section 25303." Aug. 15, 2006 Letter Br. at 8. As discussed in the Court's Order, the concern with alerting the subjects of the investigation to evidence adduced against them can be overcome by designating the materials as "Highly Confidential," thereby preventing disclosure of the information to the parties. The second interest identified above is of no weight, as it provides no indication of exactly how compelled disclosure would "obstruct the investigatory function" of the DAO. In its prior Order, the Court thus adequately weighed all of the interests identified in the City's August 15, 2006 Letter Brief.

The City now also argues that the Court failed to consider the interests identified in District Attorney Thomas Boggot's declaration, which was attached to the City's August 15, 2006 Letter Brief.

4

The Boggot Declaration states that disclosure of the DAO records at issue would "have a chilling effect on potential witnesses in other matters if they knew sensitive information would be subject to public review, at any time." ¶ 6. The City's August 15, 2006 Letter Brief fails to cite this statement from the Boggot Declaration, and in fact, fails to cite to the Boggot Declaration at all. Nonetheless, the City is correct that the Court's Order does not address its interest in avoiding a "chilling effect on potential witnesses." This failure, however, is insufficient to justify granting leave.

The local rules require the party requesting leave to establish a "manifest failure by the Court to consider *material* facts or *dispositive* legal arguments." C.L. Rule 7-9(b)(3) (emphasis added). The additional interest mentioned in the Boggot Declaration does not alter the Court's prior conclusion, and is therefore neither material nor dispositive. Contrary to ADA Boggot's assertion, allowing discovery of the information sought here, under a designation of "Highly Confidential," would not result in all criminal witness testimony being "subject to public review, at any time." Boggot Decl. ¶ 6. The information sought will not be subject to review by the public, but rather only by counsel and select others, under the "Highly Confidential" designation. Furthermore, the information sought is only subject to review because it may be highly relevant to the claims of the parties. The subpoena at issue seeks six categories of information maintained by the DAO related to Virgilio Talao and Gerardina Talao, including recordings of interviews with the Talaos, and correspondence between the City and the DAO regarding the Talaos. *See* October 5, 2006 Letter Br., Attachment. According to ADA Boggot's declaration, the DAO had contact with the Talaos during its investigation into "allegations of theft of public funds by parties to government contracts at the San Francisco International Airport." ¶ 2. These allegations were also the subject of the City's civil suit against the defendants involved in this case; and this case involves the same type of alleged fraud, on highly related construction projects.

When the City chose to pursue both criminal and civil cases arising out of the same circumstances and involving the same individuals, it assumed the risk that information obtained in one investigation might relate to the other. Indeed, even ADA Boggot acknowledges that as to the City's civil case, its criminal case, and the instant case brought by BART, information uncovered in one case may be highly relevant to another, stating in his declaration: "[M]y office is monitoring the actions filed by the San Francisco City Attorney against Tutor-Saliba Corporation and the Spencer Parties. . . . I

5

intend to review the trial testimony and documentary evidence in those actions *and in BART's present Federal Civil Action against the Spencer Parties*." Boggot Decl. ¶ 5 (emphasis added). There is no dispute, therefore, that the information sought via the subpoena at issue may be highly relevant to the parties' claims. Absent any countervailing concern that cannot be resolved with a designation of the information as "Highly Confidential," there is no ground to quash the subpoena pursuant to any official or investigative privilege. The City thus fails to establish that the Court did not consider any material fact or dispositive legal argument presented with its first motion to quash. Pursuant to Civil Local Rule 7-9, the Court hereby DENIES the City's motion for leave to file a motion for reconsideration.

### B.  Motion to quash for failure to timely re-serve the subpoenas

The City argues that the Court should quash the subpoenas because defendants waited until October 3 to re-serve them, when they knew the original subpoenas were defective on August 15, acknowledged the defects on August 22, and received the Court's Order regarding the defects on September 25. The Court agrees that defendants' most prudent course might have been to properly re-serve the subpoenas as soon as they realized their mistake. Nonetheless, it is also understandable that defendants would want to defer the cost and time of re-serving the subpoenas until they received the Court's ruling on the substance of the subpoenas. Once the Court issued its Order, on September 25, the defendants delayed eight days in re-serving the subpoenas. While a faster re-issuance would have served the interests of all the parties, a one week delay is not unjustifiable, and does not warrant quashing the subpoenas.

### C.  Compliance with Federal Rules of Civil Procedure 30(b)(5), 34, and 45

The City next argues that the subpoenas fail to meet the requirement, arising out of Federal Rules of Civil Procedure 30(b)(5) and 34, "that if a deposition subpoena is combined with a request for production, the witness *must* be provided at least 30-days advanced notice." October 11, 2006 Letter Br. at 1, citing Fed. R. Civ. P. 30(b)(5), 34; Schwarzer, Tashime & Wagstaffe, Cal. Practice Guide: FED. CIV. PRO. BEFORE TRIAL (The Rutter Group 2006) § 11:1439. Rules 30(b)(5) and 34, however, apply to a "party deponent," which the City is not. Rule 45 governs third-party subpoenas,

and contains no such 30-day requirement. Rule 45 requires only that a subpoena "allow a reasonable time for compliance." Schwarzer, Tashime & Wagstaffe, FED. CIV. PRO. BEFORE TRIAL (The Rutter Group 2006) § 11:2276. "Service of subpoenas at least 10 days before the deposition or production is customary, but not mandatory." *Id.* § 11:2277.

As to the subpoena re-served on the City, the new subpoena contains a more generous time-frame than the original subpoena. *See* Norman Decl., Exh. 1; October 11, 2006 Letter Br., Exh. 2. Therefore the Court will not revisit its finding in the original Order that the City has been given sufficient time to comply with the subpoenas. *See* September 25, 2006 Order at 2. The time frame of the new subpoena served on the DAO, however, is much tighter than the time frame of the original subpoena. *See* Norman Decl., Exh. 2; October 5, 2006 Letter Br., Attachment. The original subpoena required production of the requested documents 22 days from the date of the subpoena; the re-served subpoena requires production 7 days from the date of the subpoena. *See* Norman Decl., Exh. 2; October 5, 2006 Letter Br., Attachment. Despite this narrowing of time, the Court finds that the time allowed for compliance is not unreasonable. The subpoena requests production of only a very limited number of documents and things. *See* October 5, 2006 Letter Br., Attachment. The Court will not, therefore, quash the subpoena on this ground.

### D.      Compliance with Federal Rule of Civil Procedure 45(b)(1)

The City argues that the new subpoena on the DAO also fails to comply with Federal Rule of Civil Procedure 45(b)(1), because defendants did not give notice of the subpoena to BART before serving the subpoena on the DAO. Rule 45(b)(1) provides, in pertinent part: "Prior notice of any commanded production of documents and things or inspection of premises before trial shall be served on each party in the manner prescribed by Rule 5(b)." Fed. R. Civ. P. 45(b)(1). "The requirement of prior notice has been interpreted to require that notice be given prior to the issuance of the subpoena, not prior to its return date." *Schweizer v. Mulvehill*, 93 F. Supp. 2d 376, 411 (S.D.N.Y. 2000) (citing *Biocore Med. Technologies, Inc. v. Khosrowshahi*, 181 F.R.D. 660, 667 (D. Kan 1998); 9 Moore's Federal Practice, 45.03(4)(b) at 45-27 (3d Ed. 1999)). "Service by mail is complete on mailing." Fed. R. Civ. P. 5(b).      Based on the letter briefs, it appears that defendants personally served the new

7

subpoenas on the DOA at 9:00 a.m., on October 3, 2006. On the same day, defendants mailed copies of the subpoenas to counsel for BART. The City claims that defendants mailed the copies to BART after 9:00 a.m. Defendants claim they deposited the copies in the mail box before 9:00 a.m. The Court need not resolve this factual dispute. The purpose of the prior notice requirement of Rule 45(b)(1) is "to afford the other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things." *Schweizer*, 93 F. Supp. 2d at 511 (citing Fed. R. Civ. P. 45 committee note, 1991 amendments). The request for production contained in the new subpoena served on the DOA is identical to that contained in the original subpoena. BART has thus had two opportunities to object to the subpoenas served on the DOA. As evidenced by the abundance of discovery-related letter briefs filed in the past few months – by the City, defendants, and BART – few, if any, objectionable discovery requests have gone unnoticed. Whether or not notice was sent before or after 9:00 a.m., BART has had ample opportunity to object to these subpoenas. The Court therefore will not quash the subpoenas on Rule 45(b)(1) grounds.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES the City's motion for leave to file a motion for reconsideration (Docket No. 101), and DENIES the City's motion to quash (Docket No. 104). The requested DAO records shall be designated "Highly Confidential" pursuant to the stipulated protective order.

**IT IS SO ORDERED.**

Dated: October 23, 2006

SUSAN ILLSTON
United States District Judge