**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT,

        Plaintiff,

  v.

WILLIAM D. SPENCER, et al.,

        Defendants.
                                        /

No. C 04-04632 SI

**ORDER RE: DISCOVERY DISPUTES**

On September 22, 2006, defendants William D. Spencer, et al., filed four more letter briefs with this Court seeking resolution of discovery disputes. On October 2, 2006, the Court received plaintiff Bay Area Rapid Transit's ("BART's") consolidated response to defendants' four letters.

**1.    Motion to compel production of the Achondo deposition exhibit (Docket No. 85)**

On September 15, 2006, counsel for defendants, Ms. LeCarie Whitfield, took the deposition of Mr. Edmundo Anchondo, a former employee of BART. Mr. Eduardo Roy, counsel of record for BART, defended Mr. Anchondo. During the deposition, Ms. Whitfield handed Mr. Anchondo Exhibit 39, a BART document entitled "Executive Decision Document." Docket No. 85, Exh. 1. Ms. Whitfield also handed Mr. Roy a courtesy copy of Exhibit 39. Mr. Roy allegedly made handwritten notes on his copy of the Exhibit.

At some point during Ms. Whitfield's questioning of Mr. Anchondo regarding Exhibit 39, Mr. Roy took Mr. Anchondo's copy from him, and replaced it with Mr. Roy's own marked-up courtesy copy. Ms. Whitfield requested that Mr. Anchondo be given back the clean copy, at which time a recess

1 was taken to change videotapes. After coming back on the record, Ms. Whitfield requested that Mr. 2 Roy's marked-up copy of Exhibit 39 be marked as a deposition exhibit. Mr. Roy refused, and refused 3 to let Ms. Whitfield review his copy. Mr. Roy explained that he switched his copy with Mr. Anchondo's 4 only in order to ensure that the copies were identical. *See* Anchondo Depo. Transcript, Docket No. 85, 5 Exh. 2.

6 Defendants now seek an order from the Court compelling production of the marked-up copy of 7 Exhibit 39. Defendants argue that they must be permitted to review the marked-up copy in order to 8 ascertain whether Mr. Roy's conduct constituted impermissible coaching of the deponent. *See* Fed. R. 9 Civ. P. 30(d)(3); *see also Hall v. Clifton Precision*, 150 F.R.D. 525, 529-30 (E.D. Pa. 1993).

10 In response, BART argues that Mr. Roy's annotated copy of Exhibit 39 is protected by the 11 attorney-client privilege and the work product immunity doctrine, and that no question was pending at 12 the time of communication between Mr. Roy and Mr. Anchondo. *See In re Stratosphere Corp. Secs.* 13 *Litig.*, 182 F.R.D. 614, 621 (D. Nev. 1998) (allowing client and attorney to confer during routine 14 recesses from depositions).

15 Based on the deposition transcript, it appears that Mr. Roy's conduct may have been 16 inappropriate. If Mr. Roy had just been seeking to compare the two documents, as he claimed, the Court 17 does not understand why he needed to provide Mr. Anchondo with his marked-up copy. Furthermore, 18 the deposition transcript belies BART's argument that the communication at issue occurred during a 19 break, when no question was pending. Though it is unclear at what point Mr. Roy initially handed Mr. 20 Anchondo the marked-up copy, it is clear that Mr. Anchondo had possession of it during the actual 21 deposition, after Ms. Whitfield had directed Mr. Anchondo to a specific passage in the document. *See* 22 Transcript, Exh. 2. The issue here is not whether Mr. Roy was free to communicate with Mr. Anchondo 23 during breaks in the deposition, and therefore *Stratoshpere* is distinguishable. *See* 182 F.R.D. at 621. 24 The issue is whether Mr. Roy was permitted to essentially pass Mr. Anchondo notes while he was being 25 questioned. Such conduct is clearly inappropriate. Because Mr. Anchondo used the marked-up copy 26 of Exhibit 39 during the deposition, that marked-up copy became a *de facto* deposition exhibit. By 27 using his copy as a *de facto* deposition exhibit, Mr. Roy waived any attorney-client or work product 28 privilege that may have protected the document.

2

The Court ORDERS BART to produce the marked-up copy of Exhibit 39 to the Court for *in camera* review. The Court will determine if anything in the marked-up copy could be construed as an attempt to coach Mr. Anchondo, in which case the Court will order it produced to defendants (Docket No. 85).

**2.      Motion to compel further interrogatory responses (Docket No. 86)**

BART has agreed to supplement its interrogatory responses, and the Court therefore DENIES this motion as moot. However, because the parties appear to still have a dispute over when BART will supplement the responses, the Court ORDERS BART to provide is supplementary interrogatory responses by October 31, 2006, if they have not done so already (Docket No. 86).

**3.      Motion to compel DMJM boxes (Docket No. 87)**

DMJM was the construction oversight manager for BART on one of four projects involved in this case. Pursuant to defendants' subpoena, DMJM produced 57 boxes of documents for review. Subsequently, defendants determined, and BART admits, that an additional 106 boxes were missing from the production. BART and DMJM have since searched for the missing boxes; they have produced 2 and located 95. Nine boxes apparently remain missing, as of BART's October 11, 2006 update letter to the Court (Docket No. 105). According to BART, they continue to search for the remaining boxes, and will produce them as soon as they become available. The Court therefore DENIES this motion as moot (Docket No. 87).

**4.      Motion to compel production of the Bid Evaluation Binder for the 12YS-120 project (Docket No. 88)**

Defendants have moved to compel production of the BART Bid Evaluation Binder for the 12YS-120 South San Francisco BART station project. Defendants have also moved for sanctions. BART claims that the binder is not discoverable because it is not relevant, and not likely to lead to the discovery of admissible evidence. Nonetheless, during the parties' meet and confer process, BART agreed to produce the Binder, subject to the conditions that doing so would not constitute a waiver of

3

BART's objections to the production, and would not warrant reopening any depositions. *See* BART Letter Br., Exh. H. Defendants refused this offer. *See id.*, Exh. I.

Though defendant FWS was a subcontractor on the project, 12YS-120 is not one of the four projects that are the subject of this litigation. Nonetheless, defendants argue that the Binder may be relevant. The heart of BART's suit against defendants is that they obtained construction sub-contracts by misleading BART as to their status as a DBE (disadvantaged business enterprise). Thus BART's process for analyzing and awarding contracts on the projects at issue and similar BART improvement projects may be relevant to the claims and defenses of the parties. Defendants argue, for example, that the Binder may help determine whether BART's bid evaluation process is arbitrary and capricious, and therefore in violation of the law. It may also help develop an understanding of how BART evaluates bids for DBE purposes; such an understanding might help establish whether BART properly evaluated the bids at issue in this case. The Court is convinced that for these reasons, production of the Binder may lead to the discovery of admissible evidence. Furthermore, BART has already offered to produce the Binder. The Court GRANTS defendants' motion to compel production of the Bid Evaluation Binder for the 12YS-120 South San Francisco BART station project (Docket No. 88).

The Court DENIES defendants' motion for sanctions (Docket No. 88). Defendants' have not established that sanctions are warranted, especially considering that defendants refused BART's offer, during the meet and confer process, to produce the binder in question. (Docket # 85, 86, 87 and 88.)

1    **IT IS SO ORDERED.**

2   Dated: October 23, 2006

    _____
    SUSAN ILLSTON
    United States District Judge