IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT,<br><br>         Plaintiff,<br><br>   v.<br><br>WILLIAM D. SPENCER, et al.,<br><br>         Defendants. | No. C 04-4632 SI<br><br>**FINAL PRETRIAL SCHEDULING ORDER** |

On January 16, 2007, the Court held a final pretrial conference in the above captioned matter, which is set for jury trial beginning January 22, 2007. All parties were represented by counsel. The following matters were resolved:

1.  **Number of jurors and challenges**: There shall be a jury of 8 members. Each side shall have up to four peremptory challenges.

2.  **Voir dire**: The court will conduct general voir dire, and counsel for each side shall have up to 30 minutes total to question the panel.

3.  **Jury instructions**: Counsel have not submitted joint instructions. No later than **Friday, January 19, 2007**, counsel shall submit one complete set of proposed instructions, containing both agreed upon instructions (which shall be so noted), and contested instructions, all in the order in which they should be read to the jury. Where contested instructions are included, they should be annotated both with the proponent's authority for seeking the instruction and the opponent's reason for opposition. Where feasible, competing instructions addressing the same point shall be included together in the single

set of proposed instructions. The final submission shall be filed in hard copy and also submitted to the court on disk, suitable for reading by WordPerfect 10.0 (windows) on or before January 19, 2007.

4. **Form of jury verdict:** Neither party has submitted a form of jury verdict. No later than **Friday, January 19, 2007**, the parties shall submit a joint form of verdict.

5. <u>Trial exhibits</u>: No later than Monday, January 22, 2007, the parties shall submit their trial exhibits, in binders with numbered tabs separating and identifying each exhibit. The court shall be provided with three sets (for the court, the file and the witness) and each side shall provide one set for the other side. To the extent that original documents are to be used as exhibits in the case, they should be included in the set of exhibits for the court.

6. **Timing of trial**: The parties estimated that the trial should take between 6-9 days to present evidence. Based on this estimate, the Court will allocate 10 days total, including jury selection through argument and instructions. One day is allocated for jury selection and opening statements; each side shall have up to 45 minutes to present opening statements. One day is allocated for closing arguments and instructions to the jury; each side shall have up to 1 hour 15 minutes for closing argument. Eight days are allocated for evidence. This represents 40 hours of trial time; each side is allocated up to 20 hours, which includes direct and cross-examination and presentation of all exhibits.

7. **Trial schedule**: Jury trials are generally conducted Monday through Thursday; jury trials are generally not conducted on Fridays, although deliberating juries are free to deliberate on Fridays. The trial day runs from 8:30 a.m. until 3:00 p.m., with a 10 minute break at 10:00 a.m., a 30 minute break at 12:00 noon and a 10 minute break at 2:00 p.m., all times approximate. Trial will begin on Monday, January 22, 2007 and continue through January 25, 2007. The Court is unavailable for trial the week of January 29, 2007. Hence trial will continue on February 5, 2007 through February 8, 2007; and will complete on February 12-13, 2007.

8. **Damages:** The parties filed thirty-three motions in limine, which are discussed below. As a preliminary matter, the parties dispute the proper measure of damages to be applied at trial. BART asserts that under its single remaining claim, for false claims under the California False Claims Act, it may seek, as statutory damages, all payments received by defendants on the contracts in question, because such payments are "presumed overpayments." The Court disagrees.

### A. The California False Claims Act ("CFCA")

> The California False Claims Act permits the recovery of civil penalties and treble damages from any person who "knowingly presents or causes to be presented [to the state or any political subdivision] . . . a false claim for payment or approval." The word "person" "includes any . . . corporation [or] business . . . ." A "claim" "includes any request or demand for money . . . made to any employee, officer, or agent of the state or of any political subdivision . . . ." A plaintiff must allege that the person had actual knowledge of the falsity of the information, acted in deliberate ignorance of its truth or falsity, and/or acted in reckless disregard of its truth or falsity.

*City of Pomona v. Superior Court*, 89 Cal. App. 4th 793, 801 (Cal. Ct. App. 2001) (quoting Cal. Gov. Code § 12650 et seq.). The CFCA "should be given the broadest possible construction consistent with" its purpose "to prevent fraud on the public treasury." *Id.* (citing cases). The CFCA is "patterned on a similar federal statutory scheme (31 U.S.C. § 3729 et seq.)." *Id.* (quoting case). Where there is a lack of California authority interpreting the CFCA, "it is appropriate to turn to federal cases for guidance in interpreting the act." *Id.* at 802.

Under the federal act, the essential elements are: "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006). The third requirement, "[m]ateriality, a mixed question of law and fact, depends on 'whether the false statement has a natural tendency to influence agency action or is capable of influencing agency action.'" *City of Pomona*, 89 Cal. App. 4th at 802 (quoting *U.S. ex. rel. Berge v. Trustees of Univ. of Ala.*, 104 F.3d 1453, 1459 (4th Cir. 1997)). Thus unlike a RICO or fraud claim, a false claims action does not require a showing of actual reliance, but only that the falsity "has a natural tendency" to influence action. Furthermore, under the federal act, "the claim itself need not be false but only need be underpinned by fraud." *Id.* In other words, even if the government ultimately receives the benefit of a fair bargain, this

3

fact does not shield defendants from liability for fraudulent or false statements made in connection with negotiating or securing that bargain. As the Fourth Circuit stated in *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 788 (4th Cir. 1999), in cases where "the work contract was actually performed to specifications at the price agreed," false claims act liability may still attach "because of the fraud surrounding the efforts to obtain the contract or benefit status, or the payments thereunder." "[A]ny time a false statement is made in a transaction involving a call on the U.S. fisc, False Claims Act liability may attach." *Id.* The fraud need only be a material part of a transaction or group of transactions that eventually lead to a claim for government payment. Unlike in the RICO and fraud contexts, plaintiffs need not show that the misrepresentation proximately caused an overpayment, or even that there was, in fact, an overpayment. If a fraud is shown in connection with a payment by the government, an injury is essentially presumed.

### B. Damages

Anyone violating the CFCA:

> shall be liable to the state or to the political subdivision for three times the amount of damages which the state or the political subdivision sustains because of the act of that person. A person who commits any of the following acts shall also be liable to the state or to the political subdivision for the costs of a civil action brought to recover any of those penalties or damages, and may be liable to the state or political subdivision for a civil penalty of up to ten thousand dollars ($10,000) for each false claim.

Cal. Gov. Code § 12651(a). The CFCA thus provides for treble damages and a statutory penalty. The Federal False Claims Act likewise provides for treble damages and a statutory penalty. *See* 31 U.S.C. § 3729.

#### i. Treble Damages

BART argues that all of the $14.9 million in payments secured by defendants under the subcontracts is recoverable as damages, and must be trebled. BART's position is largely based on this Court's statement in the order granting defendant's motion for summary judgment that:

> Unlike in the RICO and fraud contexts, plaintiffs need not show that the misrepresentation proximately caused an overpayment, or even that there was, in fact, an overpayment. If a fraud is shown in connection with a payment by the government, an overpayment is essentially presumed.

BART reads far too much into this statement. The Court stated that "an overpayment is essentially presumed," in order to contrast the requirements of a CFCA claim with the requirements of a RICO or fraud claim. A CFCA claim does not require proof of injury; RICO and fraud claims do. The Court did not mean to suggest that a plaintiff need not prove damages should they establish a violation of the CFCA.

Indeed, "the government is entitled to recover treble damages under the False Claims Act only if it can demonstrate that it suffered actual damages." *Commercial Contractors, Inc. v. United States*, 154 F.3d 1357, 1371 (Fed. Cir. 1998); *see also United States v. De Bona*, 614 F. Supp. 40 (E.D. Penn. 1984). The Court here has already determined that BART has failed to present evidence that it sustained any legally cognizable injury as a result of defendants' actions. BART is therefore not entitled to any restitutionary damages under the CFCA. Any evidence of kickbacks or overpayments is therefore irrelevant to the issue of damages.

### ii. Statutory Penalty

Despite an inability to establish injury, BART is, however, entitled to the statutory penalty if it can establish all the elements of a CFCA claim. As discussed above, both the CFCA and the FCA provide for "a civil penalty of up to ten thousand dollars ($10,000) for each false claim." Cal. Gov. Code § 12651(a); *see* 31 U.S.C. § 3729 (providing for a "civil penalty" of $5,000 to $10,000).

BART contends that it "will show at least 422" violations, for each of which it is entitled to the $10,000 penalty – for a total of $4.22 million.

The Supreme Court, in *United States v. Bornstein*, 423 U.S. 303 (1976), provided guidance as to what constitutes a discrete false claim for which the statutory penalty may be sought. In that case,

> the United States entered into a $ 2,100,000 contract with Model Engineering & Manufacturing Corporation, Inc. (Model), for the provision of radio kits. Each kit was to contain electron tubes that met certain specifications. Model subcontracted with United National Labs (United) to supply these tubes at a price of $ 32 each. The tubes that United sent to Model under this subcontract were not of the required quality, but were falsely marked by United to indicate that they were. United sent at least 21 boxes of these falsely marked tubes to Model, in three, separately invoiced shipments. The radio kits that Model in turn shipped to the United States contained 397 of those falsely marked tubes. Model sent 35 invoices to the Government for the radio kits, and each invoice included claims for payment for the falsely marked tubes that had been supplied

5

to Model by United. After the Government discovered the fraud, it recovered $40.72 per tube from Model and also retained the falsely marked tubes.

*Id.* at 307. The government brought a False Claims Act suit against the subcontractor, United. One of the two principal issues on certiorari was to which acts the "forfeiture" penalty (equivalent to the "civil" penalty under the predecessor statute) should apply. The Court ruled:

> If United had committed one act which caused Model to file a false claim, it would clearly be liable for a single forfeiture. If, as a result of the same act by United, Model had filed three false claims, United would still have committed only one act that caused the filing of false claims, and thus, under the language of the statute, would again be liable for only one forfeiture. If, on the other hand, United had committed three separate such causative acts, United would be liable for three forfeitures, even if Model had filed only one false claim. The Act, in short, penalizes a person for his own acts, not for the acts of someone else.
>
> The Government's claim that United "caused" Model to submit 35 false claims is simply not accurate. While United committed certain acts which caused Model to submit false claims, it did not cause Model to submit any particular number of false claims. The fact that Model chose to submit 35 false claims instead of some other number was, so far as United was concerned, wholly irrelevant -- completely fortuitous and beyond United's knowledge or control. The Government suggests that United assumed the risk that Model might send 35 invoices when United sent the falsely branded tubes to Model. The statute, however, does not penalize United for what Model did. It penalizes United for what it did. . . .
>
> A correct application of the statutory language requires, rather, that the focus in each case be upon the specific conduct of the person from whom the Government seeks to collect the statutory forfeitures. In the present case United committed three acts which caused Model to submit false claims to the Government -- the three separately invoiced shipments to Model. If United had not shipped any falsely branded tubes to Model, Model could not have incorporated such tubes into its radio kits and would not have had occasion to submit any false claims to the United States. When, however, United dispatched each shipment of falsely marked tubes to Model, it did so knowing that Model would incorporate the tubes into the radio kits it later shipped to the Government, and that it would ask for payment from the Government on account of those tubes. Thus, United's three shipments of falsely branded tubes to Model caused Model to submit false claims to the United States, and United is thus liable for three $ 2,000 statutory forfeitures representing the three separate shipments that it made to Model.

*Id.* at 312-13.

The Court here therefore must "focus in each case . . . upon the specific conduct of the person from whom the Government seeks to collect the statutory forfeitures," and determine what conduct "caused [the primary contractors] to submit false claims to" BART.

In a subsequent case, the Ninth Circuit interpreted *Bornstein* to also allow courts to assess the statutory penalty against a subcontractor, based on the number of claims submitted by the prime contractor, where the subcontractor "knowingly causes" those false claims to be filed. *United States v.*

6

*Ehrlich*, 643 F.2d 634, 638 (9th Cir. 1981). In *Ehrlich*, the defendant "knew a false claim would be submitted each month," based on his misrepresentations to the claimant, and "could have prevented the filing of additional false claims." *Id.* "Instead, he did nothing and gained a continuing benefit from" his misrepresentation. *Id.* The Ninth Circuit therefore allowed the court to penalize him for every claim submitted by the third-party claimant, even though only one misrepresentation by the defendant underlay the claims.

Pursuant to *Bornstein*, defendants in this case may be penalized for every act which caused the prime contractors to submit a false claim. *See* 423 U.S. at 307. Pursuant to *Ehrlich*, defendants may also be penalized for every false claim submitted by the prime contractors that the defendants knew would be submitted and had the power to prevent. *See* 643 F.2d at 638.

Under this standard, BART is entitled to present evidence to the jury concerning the 110 and 130 contracts, as well as the 120 and 140 contracts. See discussion concerning defendants' motion in limine number 16.

9. **Motions in limine**:  The parties filed thirty-three motions in limine. Rulings on most of them were made at the pretrial conference and are summarized below.

**Plaintiff's motions:**

1. Motion to have Court "recognize as an evidentiary matter – before trial – that BART is a political subdivision for purposes of California Government Code sections 12650 - 12655." Like so many of the other motions in limine filed in this case, this motion raises a substantive legal question which should have been determined far earlier than the week before trial. Defendants' opposition suggests – without case law support – that BART is not a political subdivision within the meaning of the CFCA and thus, presumably, has no standing to bring these claims. BART's motion suggests, also without case law support, that BART is such a political subdivision. The Court's review suggests that BART is such a political subdivision. *Southern California Rapid Transit District v. Superior Court*, 30 Cal.App.4th 713, 723 n9. Accordingly, the motion is GRANTED.

2. Motion to "recognize the corporate status of defendants FWS and BMC."

Defendants do not oppose. GRANTED.

3. Motion to "limit the scope of questioning concerning Mr. Talao's prior bad acts." DENIED without prejudice to specific objections to specific questions at trial.

**Defendants' motions:**

1. Motion to exclude "witness testimony in greater detail" than provided during discovery based on Rule 30(b)(6) designations. DENIED as framed; overbroad and premature. This denial is without prejudice to specific objections to specific witnesses or questions at trial.

2. Motion to exclude evidence concerning "fraud in the inducement" theory. DENIED; incorrect as a matter of law and raises questions of fact for jury determination.

3. Motion to exclude evidence concerning "unlawful subcontractor substitution." DENIED as to substantive irrelevance; BART may attempt to prove that the costs of its SFCA proceedings concerning defendants were "statutory damages" related to defendants' false claims. However, denial is without prejudice to specific objections to specific questions at trial. In particular, if BART refused to answer or produce evidence based on privilege during discovery, such testimony or evidence may not be presented at trial.

4. Motion to exclude evidence that progress pay applications after February 1999 were false claims. DENIED; raises questions of fact for jury.

5. Motion to exclude evidence of a "false" statement, claim or record in bids for 120 and 140 contracts. DENIED, without prejudice to specific objections to specific questions at trial..

6. Motion to exclude "testimony from witness other than defendants to prove scienter." DENIED, without prejudice to specific objections to specific questions at trial.

7. Motion to exclude evidence that plaintiff incurred attorneys' fees or investigation and administrative costs. GRANTED; neither side may adduce evidence concerning fees or costs of this litigation. This order does not apply to fees or costs for other proceedings (e.g., the SFPA action), which will be dealt with on a case by case basis.

8. Motion to exclude evidence of "unmanifested intent." DENIED; parol evidence rule does not apply.

9. Motion to exclude evidence of other litigation and settlements. BART responds that the CCSF litigation is relevant to defendants' statute of limitations affirmative defense and to defendants' res judicata assertions. The Court therefore DENIES the motion, but with the caveat that FRE 403 objections will be considered should the examination proceed beyond the probative value of the evidence.

10, 11 and 12: Motions to exclude expert witnesses (Gonzales, Galarza and Blanco): Decision deferred pending BART's response.

13. Motion to exclude evidence pertaining to defendants' financial condition: GRANT, subject to reconsideration during trial. Both sides are precluded from referring to defendants' financial condition pending further order from the Court.

14. Motion to exclude opinions of law: GRANTED, to the extent that lay or expert witnesses are asked to provide "opinions of law." The Court does not agree, however, that all of the examples provided by defendants constitute "opinions of law," and individual questions will be considered on a question-by-question basis.

15. Motion to exclude evidence not produced during discovery: The specific issue raised is testimony by Ramiro Salazar, who defendants claim was never identified by BART in any answers to interrogatories. BART responds that it did identify Salazar as a witness to the SFPA issues in its 10/31/06 interrogatory responses (see amended Exh. E, submitted 1/17/07), and that defendants previously subpoenaed Mr. Salazar to testify in the CCSF case, so they were clearly aware of his role. Accordingly, the motion is DENIED.

16. Motion to exclude evidence concerning any projects except the 120 and 140 contracts: DENIED. The Court finds that under the materiality/relaxed reliance tests applicable to CFCA claims, BART is entitled to argue to the jury that the claims made for the 110 and 130 contracts were false claims, notwithstanding BART's awareness that defendants' DBE certification had been suspended. There are questions of fact surrounding what BART knew and whether defendants' continued representations were material under the circumstances.

17. Motion to exclude reference to time spent in or cost of litigation: GRANTED, as to both sides.

18. Motion to exclude evidence regarding "claims not previously asserted": DENIED as overbroad, without prejudice to specific objections to specific questions at trial.

19. Motion to preclude plaintiff from commenting on refused stipulations in the presence of the jury: No objection; GRANTED mutually.

20. Motion to preclude references to motions in limine or assertions of privilege in discovery: GRANTED mutually, except that parties using discovery responses at trial may read to the jury any prefatory objections included in the discovery response.

21. Motion to exclude evidence that witnesses were not called to testify: DENIED.

22. Motion to exclude evidence of mediation or settlement offers: GRANTED.

23. Motion to exclude "computer presentation evidence": GRANTED, generally. Exhibits may not be displayed to the jury prior to their admission into evidence. Documents being used as demonstrative exhibits may not be displayed prior to showing them to opposing counsel and the Court. Documents used in opening statement must be displayed to the other side prior to commencement of opening statements.

24. Motion to preclude unethical vouching: GRANTED, mutually.

25. Motion to preclude displaying exhibits to jury before admission: GRANTED.

26. Motion to require 24 hour notice of witnesses to be called: GRANTED. After discussion at the pretrial conference, this was amended to require 48 hour notice.

27. Motion to bar non-party witnesses from courtroom prior to their testimony: GRANTED. Witnesses are excluded from the courtroom prior to their testimony and until they are excused. This rule does not apply to expert witnesses.

28. Motion to bar argument about punishment: GRANTED, pending further order of the Court.

29. Motion to bar mention of dismissed claims: GRANTED, unless the evidence is relevant to a pending claim.

///

30. Motion to exclude character evidence: DENIED. The Court will follow the Federal Rules of Evidence.

**IT IS SO ORDERED.**

Dated: January 17, 2007

_____
SUSAN ILLSTON
United States District Judge