IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT,<br><br>    Plaintiff,<br><br>   v.<br><br>WILLIAM D. SPENCER, et al.,<br><br>    Defendant.<br>_____ / | No. C 04-04632 SI<br><br>**ORDER RE: UNDISCLOSED FALSE CLAIMS** |

On the third day of trial, the Court ordered plaintiff Bay Area Rapid Transit District ("BART") to file a trial brief specifically describing the quantity and nature of the acts of defendants for which it will seek civil penalties under the California False Claims Act.[1] The Court also directed BART to state the evidence that it will present in support of each alleged false claim. The Court has received BART's responsive brief and defendants' opposition, and heard oral argument on the issue on February 5, 2007. The Court now rules as follows.

**BACKGROUND**

BART filed the initial complaint in this case on November 1, 2004. The third claim of that complaint was for violation of the California False Claims Act ("CFCA"). The complaint did not allege any particular number of false claims. BART filed a first amended complaint ("FAC") on February 23, 2005. Paragraph 134 of the FAC stated, in pertinent part: "BART seeks . . . penalties for each false

---

[1] The California False Claims Act provides in pertinent part that "[a] person who commits any of the following acts . . . may be liable to the state or political subdivision for a civil penalty of up to ten thousand dollars ($10,000) for each false claim." Cal. Gov. Code § 12561.

claim defendants submitted or for which they are legally responsible . . . . A schedule of some of the claims for payment submitted to BART for work allegedly performed by SLG/Brisbane is included in Appendix A and incorporated herein by reference."  Appendix A specifically identified 97 "Progress Payment Applications Submitted by Prime Contractors to BART Based on Work Allegedly Performed by SLG/Brisbane."

On August 31, 2005, in its Rule 26(a) Supplemental Disclosure, BART claimed that it had "identified at least 347 claims for payment submitted by the prime contractors to BART that were false in that they were based, at least in part, on representations by SLG/Brisbane that it was performing work on the BART projects." *See* Pl.'s Br., Ex. A at 4:5-10.  The Supplemental Disclosure did not specifically identify any of the alleged 347 claims.

On November 4, 2005, BART filed a Second Amended Complaint ("SAC").  The SAC's description of the false claims was identical to that of the FAC.  The SAC referenced the same "Appendix A," which listed 97 payment applications made by the prime contractors to BART.

On July 24, 2006, defendants propounded a set of special interrogatories on BART.  Special Interrogatory Number 13 stated:

> Describe with specificity and in detail all facts supporting YOUR contention that BMC violated the False Claims Act.  For the purpose of this interrogatory, "describe with specificity and in detail" shall mean to state (a) whether the claim was for payment or approval of payment or was a false record made or used to get claims approved or paid, (b) the amount of each claim, (c) the name of the BART employee that received and/or relied on the claim, (e) the amount that you lost as a result of each claim, and (f) the name of each person that benefitted from your paying of the claim.

*See* Pl.'s Br., Ex. B at 32.  On August 30, 2006, BART stated in response to this interrogatory that: "Appendix A to BART's Second Amended Complaint contains a list and description of progress payment applications submitted to BART by prime contractors based on work allegedly performed by SLG/BMC."

Defendants' Special Interrogatory Number 18 also related to the CFCA claim.  It stated:

> Describe with specificity and in detail every fact that supports YOUR claim for damages on your False Claims Act claim as described in your Supplemental Disclosure re Damages that YOU incurred or suffered as a result of BMC's conduct. For the purpose of this interrogatory, "describe with specificity and in detail" shall mean to state (a) the specific contract on which the damages were incurred or suffered, (b) the specific date that each item of damage was incurred, (c) the amount

2

that was incurred on that date, (d) the specific act which resulted in YOUR damage, (e) if YOUR damage resulted from YOUR payment of money to a third party, the name of the payee.

See Pl.'s Br., Ex. B at 32. BART's initial response to this interrogatory was as follows:

> BART responds that all damages and other grounds for relief incurred or suffered by BART in connection with each of the relevant contracts and otherwise are attributable to the conduct of BMC, a partner or venturer in SLG/BMC and a participant in the operation and management of that racketeering enterprise that exercised domination and control over SLG/BMC, and also was a participant in and co-conspirator with the other defendants in the conduct alleged in BART's Second Amended Complaint.
>
> BART further responds that any additional, non-objectionable information responsive to this Interrogatory may be derived or ascertained from publicly available records or the business records of BART, the defendants, and the prime contractors involved in the BART projects and the burden of deriving or ascertaining such responsive information is substantially the same for the defendants as for BART. Pursuant to Rule 33(d), BART therefore directs defendants to those records, which are in defendants' possession and/or have been made available for their inspection and photocopying.

Defendants subsequently sent BART a meet and confer letter requesting amended responses. After receiving no response to the letter, on September 22, 2006, defendants filed a motion to compel further responses with this Court. In BART's opposition to the motion, it agreed to supplement its responses. The Court ordered BART to supplement its responses on or before October 31, 2006.

BART's amended response to Special Interrogatory Number 13 stated, in pertinent part: "BART therefore lists each violation of the California False Claims Act committed by defendants and/or SLG/BMC, including each progress payment application submitted to BART based on work allegedly performed by SLG/BMC." See Pl.'s Brief, Ex. B at 33. The response then listed the same 97 payment applications listed in Appendix A to the FAC and SAC. Following the list, BART stated:

> With respect to the False Claims Act violations committed in connection with BART Contract 12YS-140 . . . and Contract 03-QG-110 . . . , the payment information for those contracts can be ascertained from the progress billing applications (or progress payment applications) submitted by SLG/BMC to the prime contractors and the payment applications (or progress payment applications) submitted by the prime contractors to BART based, in part, on SLG/BMC's progress billing applications. Because such additional information responsive to this interrogatory may be derived or ascertained from the above mentioned business records of BART, which have been produced to defendants, and the burden of deriving or ascertaining such responsive information is substantially the same for the defendants as for BART, BART refers defendants to those records pursuant to Rule 33(d).

Id. at 39. BART's amended response to Special Interrogatory Number 18 stated merely, in pertinent

3

part: ". . . . BART responds by referencing its response to BMC's Interrogatory No. 13, the substance of which is hereby incorporated in its entirety." *Id.*

On October 13, 2006, defendants moved for summary judgment on all of BART's claims. BART's opposition to the motion did not specifically identify which actions by defendants constituted violations of the CFCA. On December 5, 2006, the Court granted summary judgment in favor of defendants on all of BART claims, with the exception of the CFCA claim.

On January 11, 2007, eleven days before the start of trial, the parties submitted a Joint Pretrial Conference Statement. In the Statement, BART stated that it intended to show "at least 422 . . . violations" of the CFCA on the 120 and 140 projects, and "that defendants committed at least 195 additional violations of the CFCA in connection with the 110 and 130 projects." *See* Statement (Docket No. 249) ¶ 14. Nowhere in the Statement did BART describe the specific identity of the 617 violations.

Defendants subsequently expressed to the Court their concern with the expansion and lack of clarity of BART's CFCA claim. The Court addressed defendants' concern in an order issued on January 19, 2007, stating:

> Finally, defendants express concern with the nebulous nature of plaintiff's CFCA claim. In particular, defendants are concerned with plaintiff's claim that it will prove 422 instances of false claims at trial. To this point, both in discovery and in connection with pre-trial motions, plaintiff has failed to identify or even suggest what might constitute those 422 false claims. In response to interrogatories, according to defendants, plaintiff only identified 97 false claims. On this point, the Court shares defendants' concern. The Court therefore clarifies that plaintiff will be constrained at trial to its discovery responses. If, in fact, plaintiff only asserted a limited number of false claims during discovery, they will be limited to offering evidence on those previously identified false claims.

January 19, 2007 Order at 3:1-8.

In response to the Court's order during trial, BART has now identified a total of 629 claims for which it will seek civil penalties.

## DISCUSSION

As the background described above shows, at multiple points in this litigation BART has had the opportunity and the responsibility to detail the actions taken by defendants for which BART seeks civil penalties under the CFCA. BART filed three complaints containing a CFCA claim, responded

4

twice to interrogatories specifically requesting such information, opposed a comprehensive summary judgment motion, and filed a Pretrial Statement which purported to describe the case it would prove to the jury. At none of these junctures did BART specifically identify more than 97 claims for which it would seek the civil penalty. Now a full week into trial, BART contends that defendants should be penalized for each of 629 specifically identified claims. The Court will not permit BART to so alter the scope of its claim at this late stage. Pursuant to Rule 37(c)(1), the Court will limit BART to proving the 97 violations it identified during discovery.

Federal Rule of Civil Procedure 37(c)(1) provides, "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2)[2], is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." The determination of whether a failure to disclose is justified or harmless is entrusted to the broad discretion of the district court. *Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1363 (7th Cir. 1996). In the Ninth Circuit, the following factors are used to guide the court's discretion: "1) the public's interest in expeditious resolution of litigation; 2) the court's need to manage its docket; 3) the risk of prejudice to the defendants; 4) the public policy favoring disposition of cases on their merits; 5) the availability of less drastic sanctions." *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997).

BART admits that its "answer to Interrogatory No. 13 was wrong or incomplete or both, and BART did not seasonably detect the deficiencies and correct or amend the answer."[3] Pl.'s Br. at 15:3-4.

---

[2] Rule 26(e)(2) states in pertinent part: "(2) A party is under a duty seasonably to amend a prior response to an interrogatory, . . . if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(2).

[3] BART also contends, however, that under Federal Rule of Civil Procedure 33(d), it responded adequately to Special Interrogatory Number 13, by directing defendants to "derive[] or ascertain[]" the nature and number of false claims associated with the 110 and 140 contracts by referring generally to "progress billing applications (or progress payment applications) submitted by SLG/BMC to the prime contractors and the payment applications (or progress payment applications) submitted by the prime contractors to BART." *See* Pl.'s Brief, Ex. B at 39. The Court disagrees. Rule 33(d) states:

> Where the answer to an interrogatory may be derived or ascertained from the business records, including electronically stored information, of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such

5

Nonetheless, BART contends that exclusion of the omitted information is not appropriate in this case. The Court disagrees.

Simply put, the prejudice to defendants that would result from allowing BART to drastically alter the scope and nature of its claims at this point far outweighs the factors which might favor allowing BART to prove its newly specified claims. *See Wendt*, 125 F.3d at 814. The purpose of the liberal disclosure and discovery policies of the federal system is to allow parties to fully develop their case theories *before* trial begins, with the full benefit of knowing all of the facts and evidence that underlie the opposing party's case. *See* Fed. R. Civ. P. 26 advisory committee notes ("The purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case."); *see also Conley v. Gibson*, 355 U.S. 41, 47 (1957) (the purpose of a complaint is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."). The inadequately disclosed information at issue here – the nature and number of the false claims – goes to the very heart of what remains of BART's case. Without this

---

> business records, including a compilation, abstract or summary thereof, and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts, or summaries. A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained.

*Id.* As discussed above, Interrogatory 13 essentially asked BART to identify each false claim underlying its CFCA cause of action. Simply referring defendants to the realm of documents containing "the payment information for those contracts," Pl.'s Brief, Ex. B at 39, was not responsive to defendants' interrogatory. BART's response essentially told defendants to look through all of the payment applications and guess which of those BART would seek to recover for. The "answer to [the] interrogatory" therefore could not "be derived or ascertained from the business records" identified. *See* Fed. R. Civ. P. 33(d). Similarly, BART's response did not specify the documents "in sufficient detail to permit [defendants] to locate and to identify" the documents constituting the alleged false claims. *See id.* Defendants could not make such a determination without BART's input.

BART also suggested at oral argument that defendants waived their opportunity to object to the sufficiency of this Rule 33(d) interrogatory response by not seeking to compel additional responses. The Court notes, however, that defendants had already moved to compel adequate responses, and that this answer came in response to defendants' motion to compel. BART's original answer to Interrogatory 13 was even less complete, as described above. Furthermore, BART produced its amended interrogatory answers well after the discovery cut-off, and well after the cut-off for bringing discovery motions; by that point, the parties had moved into the summary judgment and final trial preparation stages. It would therefore be unfair to blame defendants for the inadequacy of BART's *amended* interrogatory responses.

information, it would be difficult, if not impossible, for defendants to adequately and efficiently prepare their defense. For example, as defense counsel pointed out during oral argument, not all of the prime contractors' payment applications to BART reflected payment applications from defendants to the prime contractors. The prime contractors roughly based their payment applications to BART on the payment applications the prime contractors received from the subcontractors, such as defendants. Defendants did not necessarily make payment applications as frequently as the prime contractors did. Thus in order to properly prepare their defense, defendants would need to determine, at the very least, whether a particular payment application from a prime contractor to BART was based on a payment application the prime received from defendants. Without knowing which payment applications BART intended to name as a false claim, defendants could not do so.

Moreover, under *United States v. Ehrlich*, 643 F.2d 634, 638 (9th Cir. 1981), in order for defendants to be liable for payment application made by the prime contractors to BART, BART must show that defendants "knowingly cause[d] a specific number of false claims to be filed . . . ." BART must therefore show that, where a prime contractor submitted a payment application based on a payment application received from defendants, defendants knew their payment application would result in a payment application to BART. Thus, for example, if defendants submitted one payment application to a prime contractor, and the prime contractor spread that payment application across 3 payment applications to BART, defendants would not be liable for 3 false claims unless they knew their payment application would be split up in that way. *See id.* Without knowing the identity of the payment applications for which BART would seek the civil penalty, defendants therefore could not investigate and determine whether *Erlich* applied.

Defendants would thus be highly prejudiced if the Court allowed BART to disclose this critical information, for the first time, after the first week of trial. The Court will therefore limit BART to proving the 97 specific false claims upon which it communicated its CFCA claim was based for the two years leading up to trial.[4]

---

[4] Other courts have taken similar action in response to inadequate disclosures and discovery responses. In *United States v. Philip Morris USA, Inc.*, 219 F.R.D. 198, 201 (D.D.C. 2004), for example, the district court did not allow the government to prove an additional 650 racketeering acts in

7

**United States District Court**

For the Northern District of California

1  For the foregoing reasons, and pursuant to Rule 37(c)(1), the Court ORDERS that BART will
2  be limited to presenting evidence that the 97 claims specifically identified in the FAC, SAC, and
3  amended interrogatory responses, constituted violations of the CFCA for which civil penalties may be
4  imposed.

6  **IT IS SO ORDERED.**

8  Dated: February 5, 2007

   SUSAN ILLSTON
   United States District Judge

---

a RICO case when it had only identified 148 racketeering acts in the complaint and in response to interrogatories. The court stated:

> There is simply no justification whatsoever for the Government's failure to appropriately inform the Defendants, by formal supplementation of its interrogatory responses as required by the Rules, of its intention to rely on 650 additional Racketeering Acts to support its RICO claims.
>
> Moreover, in light of the intensive case management and oversight that this case has received, there is no question that Plaintiff's inclusion, at virtually the last minute, of 650 new Racketeering Acts in its summary judgment motion undermines the comprehensive efforts of the Court to ensure an orderly march to trial by avoiding last minute surprises of this nature. For these reasons, the Court concludes that it is appropriate to preclude the Plaintiff under Fed. R. Civ. P. 37(c) from adding the additional 650 Racketeering Acts.

*Id.* at 201. The court did, however, permit the plaintiff to use evidence of the 650 racketeering acts to support other elements required for its RICO claim. *See id.*

Similarly, the Court here does not preclude BART from offering any evidence related to the 532 additional false claims; if it is somehow relevant to another aspect of BART's case, the Court will allow evidence of those claims. BART is, however, precluded from proving that any of these 532 claims are subject to the civil penalty under the CFCA, just as the plaintiff in *Philip Morris* was precluded from proving that any of the 650 additional acts constituted Racketeering Acts under the RICO statute. *See* 219 F.R.D. at 201.