IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT,<br><br>              Plaintiff,<br><br>   v.<br><br>WILLIAM D. SPENCER, et al.,<br><br>              Defendants.       / | No. C 04-04632 SI<br><br>**ORDER RE: POST-TRIAL MOTIONS** |

On May 11, 2007, the Court heard oral argument on various post-trial motions filed by the parties, including: (1) defendants' renewed motion for judgment as a matter of law under Rule 50(b); (2) defendants' motion for new trial under Rule 59(a); (3) defendants' motion to alter, amend or vacate judgment under Rule 59(e); (4) defendants' motion for relief from judgment under Rule 60(b); (5) defendants' motion to stay proceedings pending the outcome of the post-trial motions, pursuant to Rule 62(b); (6) defendants' motion for prevailing party status and legal fees; (7) defendants' objections to plaintiff's bill of costs; and (8) plaintiff's objections to defendants' bill of costs. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court rules as follows.

**BACKGROUND**

A jury trial was held in this case from January 22, 2007, to February 15, 2007. Plaintiff San Francisco Bay Area Rapid Transit District ("BART") claimed that defendants William D. Spencer, William McGahan, Bruce R. Bonar, F.W. Spencer & Son, Inc., and Brisbane Mechanical Co., violated the California False Claims Act ("CFCA"), Cal. Gov. Code § 12650 et seq., in connection with work

subcontracted to defendants' joint venture under major BART construction projects awarded in 1998 and 1999. BART claimed that defendants created a sham joint venture with a minority-owned construction firm in order to secure subcontracts as a disadvantaged business enterprise ("DBE"). The jury returned a verdict finding defendants William D. Spencer, Bruce R. Bonar, F.W. Spencer & Son, Inc., and Brisbane Mechanical Co.,[1] liable for 27 violations of the CFCA. BART had sought to impose liability for 97 violations. The jury also found that BART knew or should have known of the fraudulent or false nature of defendants' acts before November 1, 2001, i.e., three years before plaintiff filed its claims. In light of this verdict, and pursuant to the CFCA, the Court assessed a civil penalty of $2,500 for each of the 27 false claims found by the jury, for a total of $67,500. The four liable defendants are jointly and severally liable for this amount.

Defendants now bring (1) a renewed motion for judgment as a matter of law under Rule 50(b); (2) a motion for new trial under Rule 59(a); (3) a motion to alter, amend or vacate judgment under Rule 59(e); (4) a motion for relief from judgment under Rule 60(b); (5) a motion to stay proceedings pending the outcome of the post-trial motions, pursuant to Rule 62(b); and (6) a motion for prevailing party status and legal fees. Defendants also object to BART's bill of costs, and BART objects to defendants' bill of costs filed in connection with their motion for prevailing party status and legal fees. For the following reasons, the Court DENIES all of defendants' motions, and STRIKES BART's bill of costs as untimely.

**LEGAL STANDARD**

**I.   Judgment as a matter of law:  Rule 50(b)**

Federal Rule of Civil Procedure 50(b) provides:

> If for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment . . . In ruling on a renewed motion, the court may: (1) if a verdict is returned: (A) allow the judgment to stand, (B) order a new trial, or (C) direct entry of judgment as a matter of law.

---

[1] The jury found that plaintiff had failed to prove any violations by the remaining defendant, William McGahan.

1 The party moving for judgment as a matter of law bears a heavy burden. Granting a renewed motion
2 for judgment as a matter of law is proper when the evidence construed in the light most favorable to the
3 non-moving party permits only one reasonable conclusion as to the verdict and that conclusion is
4 contrary to the jury's verdict. *See Air-Sea Forwarders, Inc. v. Air Asia Co.*, 880 F.2d 176, 181 (9th Cir.
5 1989).

6 The question in a motion for judgment as a matter of law is whether there is substantial evidence
7 to support the jury finding for the non-moving party. *See Johnson v. Paradise Valley Unified School
8 Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001); *Autohaus Brugger, Inc. v. Saab Motors, Inc.*, 567 F.2d 901,
9 909 (9th Cir. 1978). In ruling on such a motion, the trial court may not weigh the evidence or assess
10 the credibility of witnesses in determining whether substantial evidence exists to support the verdict.
11 *See Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 877 (9th Cir. 1984). Substantial
12 evidence is more than a scintilla of evidence. *See Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229
13 (1938); *Chisholm Bris. Farm Equip. Co. v. International Harvester Co.*, 498 F.2d 1137, 1140 (9th Cir.
14 1974). Rather, it is defined as such relevant evidence as reasonable minds might accept as adequate to
15 support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence. *See
16 Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).

18 **II.    Motion for new trial: Rule 59(a);**

19 Rule 59 of the Federal Rules of Civil Procedure provides that "[a] new trial may be granted . . .
20 for any of the reasons for which new trials have heretofore been granted in actions at law in the courts
21 of the United States." Rule 59 gives the trial judge the power to prevent a miscarriage of justice. *Moist
22 Cold Refrigerator Co. v. Lou Johnson Co.*, 249 F.2d 246 (9th Cir. 1957). A new trial may be ordered
23 to correct manifest errors of law or fact, but "the burden of showing harmful error rests on the party
24 seeking the new trial." *Malhiot v. Southern California Retail Clerks Union*, 735 F.2d 1133 (9th Cir.
25 1984). A motion for new trial may invoke the court's discretion insofar as it is based on claims that "the
26 verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons,
27 the trial was not fair to party moving; and may raise questions of law arising out of alleged substantial
28 errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v.*

3

*Duncan*, 311 U.S. 243, 251 (1940). Where a movant claims that a verdict is against the clear weight of the evidence, a new trial should be granted where, after giving full respect to the jury's findings, the judge "is left with the definite and firm conviction that a mistake has been committed" by the jury. *Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987).

The authority to grant a new trial under Rule 59 "is confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chem. Corp. v. Daiflon*, 449 U.S. 33, 36 (1980) (per curiam); *see Vickery v. Fisher Governor Co.*, 417 F.2d 466, 470 (9th Cir. 1969) (trial court has "wide judicial discretion" in considering new trial motion). A trial court may grant a motion for a new trial if the verdict is "contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial judge, a miscarriage of justice." *Roy v. Volkswagen of America, Inc.*, 896 F.2d 1174, 1176 (9th Cir. 1990) (quoting *Hanson v. Shell Oil Co.*, 541 F.2d 1352, 1359 (9th Cir. 1976).

### III. Motion to alter, amend or vacate judgment: Rule 59(e)

The court may reconsider a final judgment pursuant to Federal Rule of Civil Procedure 59(e). Requests for reconsideration under Rule 59(e) should not be made frequently or granted freely. Such requests are not a substitute for appeal or a means of attacking some perceived error of the court. *See Twentieth Century-Fox Film Corp. v. Dunnahoo*, 637 F.2d 1338, 1341 (9th Cir. 1981). Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. *See School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *Zimmerman v. Oakland*, 255 F.3d 734, 740 (9th Cir. 2001) (citation omitted). Rule 59(e) present "an 'extraordinary remedy,' to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

### IV. Motion for relief from judgment: Rule 60(b)

Rule 60(b) of the Federal Rules of Civil Procedure provides that:

On motion and upon such terms as are just, the court may relieve a party . . . from a final

4

> judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under 59(b); (3) fraud . . ., misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied . . . (6) any other reason justifying relief from the operation of the judgment.

This rule may also be utilized "as an equitable remedy to prevent manifest injustice," but only under "extraordinary circumstances." *United States v. State of Washington*, 98 F.3d 1159, 1163 (9th Cir. 1996) (internal quotation marks and citations omitted). Whether to grant relief is within the sound discretion of the district court. *American Fin. Life Ins. and Annuity Co. v. Llewellyn*, 139 F.3d 664, 665 (9th Cir. 1997).

**V.     Motion to stay execution of judgment: Rule 62(b)**

Under Federal Rule of Civil Procedure 62(b), a court may, in its discretion, stay execution of any money judgment pending resolution of post-trial motions. It provides:

> (b) Stay on Motion for New Trial or for Judgment. In its discretion and on such conditions for the security of the adverse party as are proper, the court may stay the execution of or any proceedings to enforce a judgment pending the disposition of a motion for a new trial or to alter or amend a judgment made pursuant to Rule 59, or of a motion for relief from a judgment or order made pursuant to Rule 60, or of a motion for judgment in accordance with a motion for a directed verdict made pursuant to Rule 50, or of a motion for amendment to the findings or for additional findings made pursuant to Rule 52(b).

Fed. R. Civ. P. 62(b).

**DISCUSSION**

Defendants present various arguments for unsettling the jury's verdict and the Court's judgment in this case, under a variety of post-trial mechanisms.[2]

//

---

[2] Some of defendants' arguments appear to be brought under the wrong post-trial mechanism. However, defendants incorporate their arguments from each mechanism into the other mechanisms. *See, e.g.,* Mot. at 20:23-24 ("All of the grounds for renewed judgment as a matter of law also support, in the alternative, granting a new trial."). The Court will therefore discuss each argument, rather than each mechanism.

**I. Whether defendants' payment applications were incorporated into the prime contractors' payment applications, and whether defendants knew they were incorporated**

Defendants first argue that the judgment should be changed because "there was no evidence that Defendants prepared or submitted any false records of pay applications to TSS [(Tutor-Saliba/Slatery)] that were then incorporated into pay applications TSS submitted to BART." Mot. at 6:15-17. Defendants also argue that there was no evidence that defendants knew the prime contractors would incorporate defendants' payment applications into the payment applications submitted to BART. For the following reasons, the Court disagrees.

With respect to the CFCA, the Court instructed the jury as follows:

> The California False Claims Act permits the recovery of civil penalties and treble damages from any person who:
>
> (1) Knowingly presents or causes to be presented to an officer or employee of the state or of any political subdivision thereof, a false claim for payment or approval; or
> (2) Knowingly makes, uses, or causes to be made or used a false record or statement to get a false claim paid or approved by the state or by any political subdivision; or
> (3) Conspires to defraud the state or any political subdivision by getting a false claim allowed or paid by the state or by any political subdivision.
>
> BART alleges that each defendant violated each of these three subsections of the California False Claims Act. You must consider the liability of each defendant separately.
>
> **Subsection (1) – Elements:**
>
> In order to prove its claim against each defendant under subsection (1) of the California False Claims Act, BART has the burden of proving each of the following elements by a preponderance of the evidence:
>
> 1. That the prime contractors submitted a payment progress application to BART that was based in part on a fraud committed by the defendant;
> 2. That the fraud underlying the progress payment application was "material" to BART;
> 3. That the defendant knew that the prime contractor would submit the progress payment application; and
> 4. That the defendant knew that the progress payment application would be based, at least in part, on the fraud.
>
> BART must prove each of these four facts by a preponderance of the evidence in order for you to find each defendant liable under subsection (1) of the California False Claims Act.
>
> **Subsection (2) – Elements:**

6

In order to prove its claim against each defendant under subsection (2) of the California False Claims Act, BART has the burden of proving each of the following elements by a preponderance of the evidence:

1. That the prime contractors submitted a payment progress application to BART that was based in part on a false record or statement that the defendant made, used, or caused to be made or used;
2. That the false record or statement underlying the progress payment application was "material" to BART;
3. That the defendant knew that the prime contractor would submit the progress payment application; and
4. That the defendant knew that the progress payment application would be based, at least in part, on the false record or statement.

BART must prove each of these four facts by a preponderance of the evidence in order for you to find the defendant liable under subsection (2) of the California False Claims Act.

**Subsection (3) – Elements:**

In order to prove its claim against each defendant under subsection (3) of the California False Claims Act, BART has the burden of proving each of the following elements by a preponderance of the evidence:

1. That the defendant conspired with one or more other persons to defraud BART in connection with getting a false claim allowed or paid by BART;
2. That the fraud was "material" to BART;
3. That the defendant knew that the prime contractor would submit the progress payment application; and
4. That the defendant knew that the progress payment application would be based, at least in part, on the fraud.

BART must prove each of these four facts by a preponderance of the evidence in order for you to find the defendant liable under subsection (3) of the California False Claims Act.

*See* Docket No. 330 at 17-19. On its special verdict, the jury found that BART proved, by a preponderance of the evidence, all of the elements of all three subsections for all defendants except William McGahan.

BART presented evidence that the contractors submitted to BART the 97 payment applications at issue. BART also presented evidence that defendants submitted payment applications to the contractors. The critical question raised by defendants' motion is whether BART presented evidence sufficient for the jury to link these two facts together, and conclude that the 97 payment applications from the contractors to BART were based in part on the payment applications from defendants to the contractors (and that defendants knew as much).

7

In response to defendants' motion, BART first argues that the CFCA did not require it to show a direct link between defendants' payment applications and the payment application submitted by the contractors to BART: "The falsity of the requests for payment made to BART by the prime contractors rested in the fact that the prime contracts had been procured, in the first instance, by a fraud Defendants caused – a fraud that infected the prime contracts in their entirety and thereby *each* and *every* claim for payment made under those contracts. This meant and still means that BART was not required to prove separately the falsity of each request for payment, but only that a request was made under the prime contract in question." Oppo. at 4:25-5:2 (emphasis in original). This interpretation of the case, and of what BART needed to prove to the jury, is incorrect.

Under BART's interpretation of the CFCA, defendants would be liable to BART for hundreds, if not thousands, of semi-monthly payment requests made by contractors to BART, even if defendants only performed one day of work on the projects. This surely was not the legislature's intent in providing for civil penalties under the CFCA. The Ninth Circuit's opinion in *United States v. Ehrlich*, 643 F.2d 634, 638 (9th Cir. 1981), is also instructive. In *Ehrlich*, the Ninth Circuit found an exception to the *Bornstein* rule[3] where the defendant "knew a false claim would be submitted each month" based on his

---

[3] The Supreme Court, in *United States v. Bornstein*, 423 U.S. 303 (1976), provided guidance as to what constitutes a discrete false claim for which the statutory penalty may be sought. The defendant in the case, United, had supplied faulty parts to a government contractor, Model, thereby causing Model to make false claims for payment to the government. With respect to the number of false claims for which United could be penalized, the Court ruled:

> If United had committed one act which caused Model to file a false claim, it would clearly be liable for a single forfeiture. If, as a result of the same act by United, Model had filed three false claims, United would still have committed only one act that caused the filing of false claims, and thus, under the language of the statute, would again be liable for only one forfeiture. If, on the other hand, United had committed three separate such causative acts, United would be liable for three forfeitures, even if Model had filed only one false claim. The Act, in short, penalizes a person for his own acts, not for the acts of someone else.
>
> The Government's claim that United "caused" Model to submit 35 false claims is simply not accurate. While United committed certain acts which caused Model to submit false claims, it did not cause Model to submit any particular number of false claims. The fact that Model chose to submit 35 false claims instead of some other number was, so far as United was concerned, wholly irrelevant -- completely fortuitous and beyond United's knowledge or control. The Government suggests that United assumed the risk that Model might send 35 invoices when United sent the falsely branded tubes to Model. The statute, however, does not penalize United for what Model did. It penalizes United for

8

misrepresentations to the claimant, and "could have prevented the filing of additional false claims." *Id.* "Instead, he did nothing and gained a continuing benefit from" his misrepresentation. *Id.* This exception to the *Bornstein* rule provides the legal basis in this case for BART's ability to seek the statutory penalty for payment applications submitted by the prime contractors, rather than only for false claims made by the sub-contractor defendants. Under *Ehrlich*, however, BART cannot seek the civil penalty for payment applications by the prime contractors that did not incorporate payment applications from defendants. Defendants only "gained a continuing benefit from" their misrepresentation when the prime contractor requested payment from BART for work done by defendants. Defendants gained nothing from payments by BART to the prime contractors for work done by other sub-contractors.

Furthermore, under BART's theory, they would have needed to show, in their own words, "that the prime contracts had been procured, in the first instance, by a fraud Defendants caused." The jury, however, made no such finding, and was not asked to do so. In fact, with respect to the 110 and 130 contracts, the Court found at the summary judgment stage that BART had not raised a triable issue of whether BART relied on defendants' misrepresentations when it awarded the prime contracts. *See* Dec. 5, 2006 Order at 17.

Despite BART's heavy reliance on this flawed understanding of CFCA liability, BART does ultimately show that, under the correct interpretation of the CFCA liability, it provided sufficient evidence for the jury to find defendants liable for the 27 false claims. As BART argues, the "evidence

---

what it did. . . .

A correct application of the statutory language requires, rather, that the focus in each case be upon the specific conduct of the person from whom the Government seeks to collect the statutory forfeitures. In the present case United committed three acts which caused Model to submit false claims to the Government -- the three separately invoiced shipments to Model. If United had not shipped any falsely branded tubes to Model, Model could not have incorporated such tubes into its radio kits and would not have had occasion to submit any false claims to the United States. When, however, United dispatched each shipment of falsely marked tubes to Model, it did so knowing that Model would incorporate the tubes into the radio kits it later shipped to the Government, and that it would ask for payment from the Government on account of those tubes. Thus, United's three shipments of falsely branded tubes to Model caused Model to submit false claims to the United States, and United is thus liable for three $ 2,000 statutory forfeitures representing the three separate shipments that it made to Model.

*Id.* at 312-13.

9

. . . showed that SLG/Brisbane billed prime contractors regularly for its work on the BART projects, and that the prime contractors billed BART for work done by SLG/Brisbane." Oppo. at 10:26-11:1 (citations to transcript omitted).

Bruce Bonar, one of the defendants, testified that he started billing the prime contracts "fairly soon after" starting work on the 120 contract, and agreed that defendants "continued sending bills for the prime contractor for the joint venture work up until the work was completed." Trial Transcript ("Tr.") at 1550:17-1551:8. Bonar testified that they did the same for the 130 contract. *Id.* at 1551:9-15. Also in evidence were 32 "progress billing" statements made by SLG/Brisbane, from February 1999 to September 2001 to Sverdrup/Conco, the prime contractor on the 140 contract. *See* Trial Exhibits ("Exs.") 161-195. BART thus presented evidence that defendants submitted payment applications to the prime contractors at regular intervals over the course of their work on the contracts.

BART also presented evidence that BART received payment applications, twice per month, from the prime contractors. Dan Fink, of Sverdrup/Conco, testified that those payment applications, submitted by the prime contractors to BART, reflected payment applications submitted to the prime contractors from the subcontractors. *See* Tr. at 499-501. BART also presented testimony on this subject from O'Brien Kreitzberg, the company that reviewed billing requests for BART on the 130 contract. Richard Raymond, the project manager for O'Brien Kreitzberg, testified that his company received payment applications from Tutor-Saliba, and that those payment applications included line-items for work that, according to the payment applications, was completed by defendants' joint venture. *See* Tr. at 1440-1442. Through the testimony of Mr. Raymond, BART entered into evidence more than half of the 97 payment applications for which BART requested civil penalties. *See* Exs. 418-490. Similarly, BART's finance manager for the SFO extension, Mr. Joseph Wong, testified that BART received from Tutor-Saliba the remainder of the 97 payment applications at issue. *See* Tr. at 1209-1210; Exs. 307-412.

The testimony of Bonar, Fink, Raymond, and Wong, together with the documentary evidence of payment applications from defendants' joint venture to the prime contractors, and payment applications from the prime contractors to BART, constituted sufficient evidence that reasonable minds might accept as adequate to support the conclusion that the prime contractors submitted payment progress applications to BART that were based in part on a fraud committed by the defendant, or on a

10

false record or statement that the defendant made, used, or caused to be made or used. Based on this and other evidence presented at trial a reasonable jury could infer that: (1) defendants made progress payment applications to the prime contractors; (2) those progress payment applications misrepresented the value of the work done by the joint venture, because the joint venture was a sham; (3) the prime contractors incorporated the defendants' progress payment applications into their own payment applications to BART, including the 97 at issue here. This evidence was also sufficient for the jury to conclude that defendants knew their payment applications would be incorporated into payment applications to BART.

## II.     Failure to properly instruct the jury

Defendants' next set of arguments involves dissatisfaction with the jury instructions. Defendants argue three of the jury instruction issues under the "judgment as a matter of law" section, and one under the "motion for new trial" section. Improper jury instructions are not a valid basis for judgment as a matter of law. The Court will therefore analyze defendants' arguments under the legal standards governing a motion for new trial under Rule 59(a), a motion to alter, amend or vacate judgment under Rule 59(e), or a motion for relief from judgment under Rule 60(b).

### A.     Failure to instruct the jury on the effect of "government knowledge"

Defendants requested, and the Court rejected, an instruction to the jury providing, in summary, that: "A defense to a cause of action under the [CFCA] is the government's knowledge that the claim was false when the claim was submitted." Defs.' Proposed Instruction 36. After rejection of this instruction, defendants again requested that the Court instruct the jury that: "In addition, evidence that BART was aware that SLG/BMC was not a DBE entity or not a joint venture establishes that defendants' claims were not false or fraudulent." Tr. at 1783:2-13. The Court also refused to include this instruction.

The Court's rejection of an explicit "government knowledge" instruction was appropriate. Government knowledge is not a stand-alone defense to a CFCA claim. *See U.S. ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991) ("That the relevant government

11

officials know of the falsity is not in itself a defense."); *Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 519, 534 (10th Cir. 2000) ("government knowledge of a contractor's wrongdoing is no longer an automatic defense to an FCA action"). Though it is not an affirmative defense, government knowledge is not irrelevant. It may be used to show that a defendant did not "knowingly" submit, or cause to be submitted, a false claim. *See Hagood*, 929 F.2d at 1421 ("the knowledge possessed by officials of the United States may be highly relevant. Such knowledge may show that the defendant did not submit its claim in deliberate ignorance or reckless disregard of the truth."); *U.S. ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 286-89 (4th Cir. 2002) (government's "full knowledge of the material facts underlying any representations implicit in [the defendant's] conduct negate[d] any knowledge that [the defendant] had regarding the truth or falsity of those representations"); *U.S. ex rel. Dreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1156-57 (2d Cir. 1993) ("the statutory basis of an FCA claim is the defendant's knowledge of the falsity of its claim, [] which is not automatically exonerated by any overlapping knowledge by government officials," however "[i]n some cases, the fact that government officials knew of the contractor's actions may show that the contract has been modified or that its intent has been clarified, and therefore that the claim submitted by the contractor was not 'false.'"). Nothing in the jury instructions prevented or discouraged defendants from arguing to the jury that BART's knowledge of defendants' lack of DBE status negated the knowledge and falsity requirements of the CFCA.

### B. Materiality jury instruction

The Court instructed the jury that: "The act constituting or causing the false claim must be 'material.' Materiality depends on whether the false statement has a natural tendency to influence agency action or is capable of influencing agency action." Defendants complain that the Court should also have included, as they proposed, that: "A false claim is material only if BART would not have awarded the prime contracts if it had known the facts it contends were not disclosed." Defs.' Proposed Instruction 16. The Court properly rejected defendants' proposal. Defendants' proposal conflates CFCA liability with a "fraud in the inducement" claim. As discussed at length in several orders, the CFCA requires less than a claim of fraud. The CFCA does not require a showing of actual damages,

it does not require a showing of inducement or but-for causation, and it does not require a showing of reliance. BART did not need to prove that but-for defendants' misrepresentations it would not have awarded the contracts. Moreover, the Court took the language of the materiality instruction directly from one of the few California cases that addresses the CFCA, *City of Pomona v. Superior Court*, 89 Cal. App. 4th 793, 802 (Cal. Ct. App. 2001) ("[m]ateriality, a mixed question of law and fact, depends on 'whether the false statement has a natural tendency to influence agency action or is capable of influencing agency action.'").

### C.    Statute of limitations instruction

Defendants next complain that the Court did not instruct the jury, as defendants requested, that if BART knew of the underlying fraud or falsity before November 1, 2001, then the statute of limitations expired for all 97 payment applications, including those submitted within the limitations period. Instead, the Court instructed the jury that if BART knew of the underlying fraud or falsity before November 1, 2001, then the statute of limitations expired for those payment applications which the contractors submitted before November 1, 2001. The Court explained the reasoning behind this instruction, at length, in a Memorandum issued on February 13, 2007. Defendants present no compelling reasons to reconsider the findings of the Memorandum.

### D.    "False" instruction

Defendants argue that the Court's failure to instruct the jury that "[f]alse means a lie," was "prejudicial error warranting a new trial." Mot. at 21:1-4. "False," however, does not mean "a lie." False means untrue. In support of their argument, defendants cite a Ninth Circuit holding that "'Known to be false' does not mean scientifically untrue, but rather 'a lie.'" *United States ex. rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815-16 (quoting case, quoting statutory language defining knowing fraud). "Known to be false," however, is different from "false." The CFCA requires that a defendant "knowingly" present a false claim in order to be held liable. The Court properly instructed the jury as much, and defined "knowingly" with specificity. *See* Instructions at 17, 21. There was no error in the Court's instruction.

13

### E.    Clarification of the laches instruction

During deliberation, the jury requested the Court to define "prejudice" in the context of the laches defense. The Court explained to them:

> The prejudice that they are talking about is it's intended in the lay sense of something harmful. And an example might be if there was evidence that might have been available at one time that wasn't available at another time, and if the defendants proved that because too much time had gone by evidence wasn't available, why, that would be an example of the kind of prejudice that the cases talk about.

Tr. at 1940:18-24.

Defendants now complain that "[w]hile the explanation the court gave was one example of laches, it was error for the court to additionally instruct the jury without giving counsel a prior opportunity to object to the language of this further instruction." Mot. at 22:4-7. Defendants do not explain, however, what part of the Court's instruction was objectionable. Defendants suggest that by giving one example, the Court misled the jury into thinking the example was the only possible way to find prejudice. The Court plainly told the jury, however, that this was "an example." Moreover, the other "examples" provided by defendants – a witness who has died, or a witness whose memory has faded – are essentially, if not precisely, the same as the example provided by the Court. A dead witness and forgotten facts are both "evidence that might have been available at one time that wasn't available at another time."

### III.    Exclusion of evidence

Defendants next argue that they were irreparably prejudiced by exclusion of evidence that Virgilio Talao's company, SLG, failed to complete work for the City and County of San Francisco because of ongoing criminal, civil, and financial problems. Exclusion of this evidence was not a clear error of law, and did not lead to a miscarriage of justice. Defendants argue that SLG's failure to complete work for the City and County of San Francisco would have shown that SLG did not significantly participate in the joint venture's work on the BART projects because it was having legal and financial troubles, not because it never intended to do work on the BART projects. The Court finds, as it did during the trial, that the slight probative value of this testimony would have been outweighed by the danger of prejudice, confusion, and waste of time.

14

### IV. Defendants' knowledge that BART funds were the source of the payments

Defendants next argue that BART failed to prove that defendants knew BART funds, rather than the funds of other governmental entities involved in the projects, were the source of payments made to the prime contractors. This argument fails for two fundamental reasons: (1) under the CFCA a defendant only need know that a request for payment will be made to the governmental entity – there is no requirement that a payment ever be made, thus the precise source of any payment made is irrelevant; and (2) a reasonable jury could easily conclude from the evidence presented at trial that BART was the funding source, and that defendants knew BART was the funding source.

### V. Evidence of conspiracy

Defendants contend that because BART presented no evidence of actual damages, there was insufficient evidence of conspiracy. This argument also fails, because there is no requirement under the CFCA that actual damages be proven in order to establish a CFCA conspiracy. In support of their argument, defendants rely on the proposition that under general civil conspiracy theory under California law, a plaintiff must prove damages. The CFCA, however, contains its own conspiracy clause; BART's case, and the jury's findings, did not rely on general principals of civil conspiracy. As discussed at length in previous orders, the CFCA provides for statutory penalties even in the absence of actual damages. BART's failure to prove actual damages therefore does not require altering the jury's verdict finding defendants liable for a CFCA conspiracy.

### VI. Inducement

Defendants next argue that BART failed to present evidence that the defendants "induced" BART to enter into the prime contracts. Again, defendants misunderstand what needs to be shown to prove CFCA liability, and conflate it with a "fraud in the inducement claim." As discussed above, in prior orders, and in the jury instructions, the CFCA requires only that the falsity be material, and under the CFCA, "[m]ateriality, a mixed question of law and fact, depends on 'whether the false statement has a natural tendency to influence agency action or is capable of influencing agency action.'" *City of Pomona*, 89 Cal. App. 4th at 802. Reliance, inducement, and actual damages need not be shown in

15

order to establish liability and impose the civil penalty. BART presented sufficient evidence for a reasonable jury to conclude that defendants' misrepresentation – that it was a DBE – was likely to influence BART's actions. BART did not need to show that it actually did.

**VII.  Imposition of the civil penalty**

Defendants next argue that this Court's judgment, imposing a civil penalty of $2500 dollars for each of the 27 violations found by the jury, was based on "shear [sic] speculation" and "contravenes the parties' Seventh Amendment rights to a jury trial." Mot. at 37:14-21. Defendants contend that by imposing the penalty for each of the 27 violations, the Court ignored the jury's finding that the statute of limitations had run for all of the payment applications submitted prior to November 1, 2001. Defendants argue that because the jury did not specifically identify the 27 payment applications, there is no way to know whether they fell within or outside of the limitations period. The Court agrees with defendants that there is no way to precisely identify the 27 payment applications for which the jury found defendants liable. This is so because neither party wanted the Court to include on the verdict form a grid listing the 97 payment applications at issue, together with the dates on which they were filed, which would have allowed the jury to designate precisely which of the payment applications it found which of the defendants liable for. Instead, the parties agreed that the verdict form should simply ask the jury to determine the number of claims for which defendants were liable. The following exchange, which occurred after a substantial discussion of the proposed verdict forms, reflects these understandings:

> The Court: . . . So what do you think we should do?
> Mr. McInerney: No grid.
> . . . .
> The Court: Have I got an agreement between both of you, no grid?
> Mr. Patula: Yes.
> The Court: . . . So you think we should ask them the number of claims?
> Mr. McInerney: Yeah.
> The Court: You both think?
> Mr. Patula: Yes.

Tr. at 1754-1755.

In fact, of the 97 payment applications submitted to the jury, approximately 65 of the payment applications covered billing periods ending before November 1, 2001 and approximately 32 of them

16

covered billing periods after that date. Given the evidence and the instructions, it is perfectly reasonable to conclude that the jury took into account its statute of limitations finding in reaching the number of violations. With respect to the statute of limitations, the Court instructed the jury as follows, in pertinent part:

> In this case, in order to determine when the action "accrued" for any given false claim, you must determine when BART knew or should have known of the fraud or falsity committed by defendants in obtaining the subcontracts for SLG/BMC.
>
> If defendants prove, by a preponderance of the evidence, that BART knew of the fraud or falsity committed by defendants before November 1, 2001, then the statute of limitations has expired for any progress payment applications filed before November 1, 2001.

Instructions at 25.

The jury thus understood that defendants could not be liable for payment applications submitted before November 1, 2001, if BART knew or should have known of the falsity prior to that date. Knowing this, the jury would not have included any pre-November 1, 2001 payment applications in the 27 for which it found defendants liable. The fact that the special verdict form placed the statute of limitations question after the payment application question does not mean that the jury did not incorporate its statute of limitations finding into the payment application finding; to the contrary, the numbers involved suggest quite clearly that it did. It is therefore reasonable to conclude that the jury did as instructed, and limited the number of penalizable payment applications to those falling within the limitations period.

### VIII. Civil penalties as "unconstitutionally excessive"

Defendants also complain that the Court's assessment of a total of $67,500 in penalties for 27 false claims violations is "unconstitutionally excessive." Mot. at 38:24. Defendants again mistakenly argue that "the penalty provision of the false claims act is not intended to replace the government's failure to prove actual damages." Mot. At 39:17-18. As discussed repeatedly, at length, actual damages need not be shown in order to impose the civil penalty under the CFCA. As laid out in the Order imposing civil penalties, in light of all of the evidence submitted during trial, including the non-credible testimony of William Spencer outside of the jury's presence, the Court agrees with the jury that

defendants misrepresented their status as a DBE in order to unjustly secure the lucrative public works contracts at issue. Defendants themselves cite two cases where courts imposed civil penalties in a case such as this, where no actual damages were proven. *See United States v. Advanced Tool Co.*, 902 F. Supp. 1011, 1018-19 (W.E. Mo. 1995) (imposing $365,000 in penalties where the government had proven no damages); *United States ex rel. Virgin Island Housing Authority v. Coast General Construction Services Corp.*, 299 F. Supp. 2d 483 (D.V.I. 2004) (imposing penalties despite lack of actual damages).

### IX. Defendants' motion for prevailing party status and attorney's fees

Defendants argue that they have a right to attorney's fees pursuant to fee-shifting clauses contained in the sub-contracts between defendants' joint venture and the prime contractors. Specifically, the subcontract between Sverdrup-Conco and SLG/BMC provided that:

> In the event either party becomes involved in litigation arising out of the Contract or the performance thereof, the court in such litigation, or in a separate suit, shall award reasonable attorney's fees to the justly entitled party.

The subcontract between Homer J. Olsen, Inc. and BMC provided:

> In the event the parties become involved in litigation or arbitration with each other arising out of this Agreement or other performance thereof in which the services of an attorney or other expert are reasonably required, the prevailing party shall by fully compensated for the cost of its participation in such proceedings, including the cost incurred for attorneys' fees and experts' fees.

BART was not a party to those contracts, and the prime contractors were not parties to this lawsuit. Nonetheless, defendants argue that BART is subject to the fee-shifting clauses. Under California law, a non-signatory party can be held subject to a fee-shifting clause if it is a third party beneficiary to the contract, and if it could have sought fees under the clause had they prevailed in the action. *See Whiteside v. Tenet Healthcare Corp.*, 101 Cal. App. 4th 693, 709 (Cal. Ct. App. 2002). Defendants here do not explain how BART would have been entitled to attorney's fees, pursuant to the contracts between the prime contractors and defendants, had it prevailed on its claims.

Defendants' claims that they are entitled to fees and costs are therefore without merit. In light of this finding, BART's objections to defendants' bill of costs are moot.

**X.     BART's bill of costs**

On April 12, 2007, BART filed a bill of costs, seeking a total of $122,966.24. Defendants argue that BART's bill of costs was untimely filed.

Civil Local Rule 54-1(a) requires a prevailing party seeking costs to file a bill of costs "no later than 14 days after entry of judgment or order under which costs may be claimed." Subsection (c) provides that "any party who fails to file a bill of costs within the time period provided by this rule will be deemed to have waived costs." Civ. L. Rule 54-1(c). The Court entered judgment in this case on March 23, 2007. The Court issued a corrected judgment on March 29, 2007, in order to correct a simple arithmetic error. BART argues that the 14 day window should run from the date of the corrected judgment, rather than that of the first judgment. The Court is unconvinced. The parties understood on March 23, 2007, that judgment had been entered in favor of BART. This is evidenced by the fact that BART filed its notice of appeal later that same day. BART does not explain why correcting a clerical error in a judgment should open a new window in which to file a bill of costs.

The circuit courts' application of an analogous Federal Rule of Appellate Procedure supports strict application of the local rule at issue here. Appellate Rule 39(c) provides that "(a) party who desires such costs to be taxed shall state them in an itemized and verified bill of costs which he shall file with the clerk . . . within 14 days after the entry of judgment." In *Laffey v. Northwest Airlines, Inc.*, 587 F.2d 1223 (D.C. Cir. 1978), the prevailing party did not seek costs until after a petition for rehearing had been denied, 11 months after entry of judgment. Though, as here, the cost-seeking party was mistaken as to when the 14 day window opened, the court found that the bill of costs was untimely, and found no good cause shown to grant an extension of time.

Similarly, the Ninth Circuit has found that "Rule 39(d) sets forth a 14-day time limit in plain terms and its definite time limit must be scrupulously observed by litigants. Should we infer good cause for noncompliance merely from a mistake in calendaring or from inattendance to office chores, we would seriously undermine the policy of the rules." *Mollura v. Miller*, 621 F.2d 334, 336 (9th Cir. 1980) (citation omitted).

The Court finds that BART was required to file its bill of costs by April 6, 2007. BART did not file its bill of costs until April 12, 2007, and has shown no good cause for granting an extension to the

time to file. Pursuant to Civil Local Rule 54-1, the Court deems BART to have waived costs, and hereby STRIKES BART's bill of costs.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court DENIES defendants' renewed motion for judgment as a matter of law under Rule 50(b); motion for new trial under Rule 59(a); motion to alter, amend or vacate judgment under Rule 59(e); and motion for relief from judgment under Rule 60(b). In light of these conclusions, defendants' motion to stay proceedings pending the outcome of the post-trial motions, pursuant to Rule 62(b), is DENIED AS MOOT. [Docket No. 370] The Court SUSTAINS defendants' objection to BART's untimely-filed bill of costs, and STRIKES BART's bill of costs. [Docket No. 392] BART's objections to defendants' bill of costs are OVERRULED as moot. [Docket No. 390]

**IT IS SO ORDERED.**

Dated: May 14 , 2007

SUSAN ILLSTON
United States District Judge